UNITED STATES of America, Plaintiff–Appellee,

v.

Vance G. BRADSHAW, Defendant–Appellant.

No. 08–3307.

United States Court of Appeals, Tenth Circuit.

Aug. 26, 2009.

John K. Henderson, Jr., Federal Public Defender Office, Wichita, KS, for the Defendant–Appellant.

David M. Lind (with Marietta Parker, Acting United States Attorney, on the brief), Office of the United States Attorney, District of Kansas, Wichita, KS, for the Plaintiff–Appellee.

Before HENRY, Chief Judge, O'BRIEN, Circuit Judge, and EAGAN,[*] District Judge.

HENRY, Chief Judge.

On Alex Acosta's first day of work as a bank teller, Vance Bradshaw approached him and handed him a note. The note came to the point, "Take all the money from the till and place it on the counter." Rec. vol. I, doc. 41, at 1. Visibly shaken, the teller put the money from his drawer out on the counter, and, pursuant to his recently completed training, he reached for the "bait" or "mutilated money" that would then set off an alarm in the security department. The teller testified that Mr. Bradshaw said, "[D]on't you touch anything else[;] give me what you have there." *Id.* doc. 57, at 136. Mr. Bradshaw took the cash, placed it in a backpack and left.

Following the robbery, the police searched nearby trash receptors, finding a backpack that matched a description of that Mr. Bradshaw carried into the bank; under the pack, the officers found a BB gun (later determined to be Mr. Bradshaw's) and a black ski mask. At trial, the district court admitted the BB gun to show intent and identity. The district court also refused to instruct the jury about bank theft or allow Mr. Bradshaw to argue that he had thieved the funds rather than robbed them because bank theft is not a lesser included offense of the charged offense, bank robbery, and because arguments about the elements of bank theft would confuse the jury.

Mr. Bradshaw appeals these rulings. For the reasons that follow, we AFFIRM.

## I. BACKGROUND

The government charged Mr. Bradshaw with one count of bank robbery in violation of 18 U.S.C. § 2113(a). On April 28, 2008, Mr. Bradshaw entered the Intrust Bank, an FDIC insured institution. He slid a note across the counter instructing the teller to give him money. The teller, having difficulty understanding Mr. Bradshaw, looked back at Mr. Bradshaw who said nothing but gestured towards the note. After reading the note and seeing Mr. Bradshaw's backpack, which the teller testified that he believed could contain a gun or bomb, the teller took all of the $20 and $10 bills from his drawer and put them on the counter. The teller testified that he feared bodily injury. He also testified that he reached for "bait bills" from his drawer, but Mr. Bradshaw told him not to touch them. Mr. Bradshaw argued at trial that the teller was mistaken—that he remained quiet during the encounter. The teller and another witness previously testified that Mr. Bradshaw never said anything in the bank. After putting $1,200 in the backpack, Mr. Bradshaw left the bank.

Police searched the area near the bank along Mr. Bradshaw's escape route and found his backpack in a dumpster. Under the backpack, they found a ski mask and a

* The Honorable Claire V. Eagan, Chief Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

Daisy brand $CO_2$-powered BB gun. Mr. Bradshaw had purchased the BB gun a week or two before the robbery from another man, Justin Trammel. Mr. Bradshaw argued that the BB gun should not be admitted at trial because it was irrelevant to the question of intimidation and unduly prejudicial.

While Mr. Bradshaw admits that he came into the bank and acquired the capital, he denies that he "intimidated" the teller, as required by § 2113(a). Specifically, § 2113(a) states:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association. . . .
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

Mr. Bradshaw sought to argue to the jury that he committed bank theft or larceny instead of bank robbery. Bank theft, under § 2113(b), is similar to bank robbery, but among other differences, bank theft notably lacks the required element, taking money "by force and violence, or by intimidation," 18 U.S.C. § 2113(a), and generally carries a lighter sentence.

The district court held that the BB gun was admissible to show intent to intimidate and identity. The district court also refused to allow Mr. Bradshaw to argue at trial that he committed bank theft instead of bank robbery and refused to give an instruction regarding bank theft. Mr. Bradshaw now appeals these determinations.

## II. DISCUSSION

A. The district court did not abuse its discretion in admitting the BB gun found underneath the backpack.

 We review a district court's evidentiary rulings for abuse of discretion. *United States v. Hall,* 473 F.3d 1295, 1304 (10th Cir.2007). Mr. Bradshaw filed a motion in limine to exclude the BB gun and later filed a post-trial motion, at both times arguing that the BB gun was irrelevant. In response to Mr. Bradshaw's motion for judgment of acquittal or for a new trial, the district court explained the relevance of the evidence as follows:

> Even though there was no direct evidence that the defendant possessed the gun when he was in the bank, circumstantial evidence would allow the jury to infer that such was the case, and the jury was entitled to consider this fact in evaluating the defendant's actions and intent during the incident. Moreover, evidence of the gun's presence in the dumpster and the defendant's recent purchase of it tended to prove that the defendant was in fact the person who committed the robbery, which was an essential element of the offense.

Rec. vol. I, doc. 41, at 5–6. Though we might agree with Mr. Bradshaw that there was no need to introduce the gun to prove the conceded element of identity, the circumstantial evidence was indeed relevant to prove intent. Section 2113(a) does not list an explicit intent requirement; however, we read a general intent requirement into the statute—that Mr. Bradshaw acted knowingly. *Carter v. United States,* 530 U.S. 255, 269–70, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000). The jury could infer that Mr. Bradshaw acted with a knowing intent to intimidate when he obtained the gun and when he may have carried it into the bank in his backpack.[1] This BB gun

---

1. During oral argument, it became unclear whether the jury had been fully apprised of the intent requirement in accordance with

*United States v. Mitchell,* 113 F.3d 1528, 1531 (10th Cir.1997) ("In determining whether the

belonged to this defendant; its presence at the scene of the crime suggests a reason it was brought there.

Mr. Bradshaw points to several cases that he suggests should prevent a finding of relevance in this case. He admits that guns may be relevant as "tools of the trade" for some crimes, including drug crimes. *E.g., United States v. Martinez,* 938 F.2d 1078 (10th Cir.1991); *see also United States v. Thody,* 978 F.2d 625, 630 (10th Cir.1992) (referring to pistols as "tools of the trade" in armed bank robbery). However, he argues this case is closer to an older circuit case, *United States v. Warledo,* 557 F.2d 721 (10th Cir. 1977), in which we held that a firearm was inadmissible in a conspiracy to commit arson case because it was unrelated to any disputed issue. *Id.* at 724–25. One might suspect, though, that firearms are more regularly utilized in bank robbery than arson, or certainly, conspiracy to commit arson.

Mr. Bradshaw also suggests that there is a circuit split on the specific issue whether firearms found after an alleged bank robbery are admissible to show intimidation under § 2113(a). Aplt's Br. at 6–7; *compare United States v. Ferreira,* 821 F.2d 1, 6–8 (1st Cir.1987) (finding er-

ror based on admission of two irrelevant firearms) and *United States v. Laker,* 427 F.2d 189, 190 (6th Cir.1970) (similar), *with United States v. Vosper,* 493 F.2d 433, 435–436 (5th Cir.1974) (upholding admission of firearm). The "circuit split" that Mr. Bradshaw identifies is less than helpful. In both of the cases that Mr. Bradshaw cites where courts held that firearm evidence was irrelevant to an unarmed bank robbery charge, police found the weapons on the defendant's person or in his automobile, somewhat distant in time and place from the robbery.

In *Ferreira,* the First Circuit held that the district court erred in admitting real and testimonial evidence of two loaded weapons in an unarmed bank robbery trial. The police found the weapons on Mr. Ferreira 35 to 40 minutes after the robbery, as he exited an apartment in a public housing project. *Ferreira,* 821 F.2d at 3. There was nothing in the record to suggest Mr. Ferreira "actually carried a gun at the time of the robbery," though he may have appeared to carry a gun. *Id.* at 7. In *Laker,* the government charged Mr. Laker with unarmed bank robbery in violation of § 2113(a), and the Sixth Circuit, without detailed factual discourse, held that the district court's admission of the hand gun

evidence is sufficient to support a finding of intimidation in the context of a bank robbery, we look to three factors [including]: ... (2) whether the defendant intended to intimidate ...."), *abrogated on other grounds by Chambers v. United States,* — U.S. ——, 129 S.Ct. 687, 691, 172 L.Ed.2d 484 (2009). The instruction given to the jury mirrors Tenth Circuit Criminal Pattern Jury Instruction 2.77:

> To take "by means of intimidation" is to say or do something in such a way that a person of ordinary sensibilities would be fearful of bodily harm. It is not necessary to prove that the alleged victim was actually frightened, and neither is it necessary to show that the behavior of the defendant was so violent that it was likely to cause terror, panic or hysteria. However, a tak-

ing would not be by "means of intimidation" if the fear, if any, resulted from the alleged victim's own timidity rather than some intimidating conduct on the part of the defendant. The essence of the offense is the taking of money or property accompanied by intentional, intimidating behavior on the part of the defendant.

Rec. vol. I, doc. 35, at 19–20; *see* 10th Cir., Criminal Pattern Jury Instructions (2005 ed.), No. 2.77. While the instruction could more clearly alert the jury to the intent requirement, the instruction adequately conforms to the requirements in *Mitchell.* Rec. vol. I, doc. 35, at 20 ("The essence of the offense is the taking of money or property accompanied by *intentional,* intimidating behavior on the part of the defendant." (emphasis added)).

that police found in the Mr. Laker's car was error, as the gun had no probative weight and presented a great risk of prejudice. 427 F.2d at 190.

Mr. Bradshaw's case is distinguishable from both *Ferreira* and *Laker* because there is more circumstantial evidence that Mr. Bradshaw actually carried the weapon during the robbery. Officers uncovered Mr. Bradshaw's gun in a dumpster on his escape route beneath the very backpack that Mr. Bradshaw carried during the robbery, not later, in a remote place. It is doubtful that Mr. Bradshaw dumped the gun on the way in and then managed to drop his backpack right on top of it during his hurried exit. Thus, these circumstances strongly suggest that Mr. Bradshaw carried the gun during the crime.

■ As to Mr. Bradshaw's argument that the admission of the gun was more prejudicial than probative, we have already established that the BB gun is probative because it suggests Mr. Bradshaw intended to intimidate. Further, the prejudice involved in admitting a BB gun is not as heightened as the prejudice Mr. Laker or Mr. Ferreira faced when courts admitted their more dangerous firearms without sufficient evidence that they carried the weapons during their crimes. The district court did not abuse its discretion admitting the gun.

B. The district court did not err in refusing to allow Mr. Bradshaw to argue that he committed bank theft.

■ Mr. Bradshaw asked the court to instruct the jury about his admission to bank theft. Specifically, Mr. Bradshaw proposed that the court instruct the jury to consider only the crime charged and include the following:

> Mr. Bradshaw was not charged with bank theft; he was charged with bank robbery. The primary distinction between bank theft and bank robbery is

that bank robbery requires the government to prove beyond a reasonable doubt that Mr. Bradshaw obtained the money from the bank by force and violence or by intimidation. You may not convict Mr. Bradshaw of bank robbery based upon his admission of committing bank theft unless you also find beyond a reasonable doubt that Mr. Bradshaw obtained the money by force and violence or by intimidation.

Rec. vol. I, doc. 25, at 2 (Def.'s Proposed Instructions). The government objected to the proposed instruction and further asked the court to "prohibit the introduction of any argument, discussion or evidence concerning the crime of bank theft because this jury cannot lawfully consider the crime of bank theft." *Id.* vol. I, doc. 26, at 3.

■ The district court instructed the jury to consider only the crime charged, but refused to give Mr. Bradshaw's proposed addition to the instruction. As the district court explained, and as Mr. Bradshaw does not challenge, bank theft under § 2113(b) is not a lesser included offense of bank robbery under § 2113(a). *Carter,* 530 U.S. at 262, 120 S.Ct. 2159. The district court determined, this being the case, that introduction of evidence respecting a crime not charged would confuse the jury "about the actual crime charged and the elements of bank robbery," so it declined a proposed instruction on bank theft. Rec. vol. I, doc. 41, at 6. The district court also granted the government's request to limit discussion of bank theft. Mr. Bradshaw appeals these rulings, arguing that the district court improperly denied the instruction and limited his defense. Aplt's Br. at 9.

■ We generally review jury instructions de novo as a whole to ensure that they state the governing law accurately, and we review a district court's decision to

refuse to give a particular jury instruction for abuse of discretion. *United States v. Bedford,* 536 F.3d 1148, 1152 (10th Cir. 2008). The parties agree to evaluate the court's action here under an abuse of discretion standard (as the government terms this issue a "challenge to the admissibility of evidence [reviewed] solely for abuse of discretion," Aple's Br. at 25, and Mr. Bradshaw cites only the abuse of discretion standard, Aplt's Br. at 5).

█ It is axiomatic (and important) that a defendant is entitled to an instruction stating the law on his theory of the case, but only if the theory is supported by the law and the facts in evidence. *See United States v. Benally,* 146 F.3d 1232, 1235–36 (10th Cir.1998) ("[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (internal quotation marks and citation omitted)). Similarly, a criminal defendant has a constitutional right to present a defense, but that right "may, in appropriate cases, bow to accommodate other legitimate interests," including those interests embodied in the rules of evidence. *See United States v. Serrano,* 406 F.3d 1208, 1214–15 (10th Cir.2005) ("A criminal defendant's right to present a defense [thought not absolute] is essential to a fair trial."). While evidence addressing an uncharged crime is not always irrelevant (nor is an instruction addressing a uncharged crime always improper), the district court has discretion to exclude even relevant evidence when the danger of "confusion of the issue, or misleading the jury" greatly outweighs its probative value. Fed.R.Evid. 403.

Here, there is no indication the district court abused its discretion in its determination that introduction of bank theft evidence would confuse the jury. Rec. vol. I, doc. 41, at 6 ("[A]rguments to the jury about the elements of bank larceny likely would have injected confusion about the actual crime charged and the elements of bank robbery."). The key difference between theft and robbery is that bank theft does not involve force, violence, or intimidation and is usually identified with cases where bodily harm is not a danger (like passing bad checks, stealing from ATM's, or forgery, etc.). *E.g., United States v. Peterson,* 248 F.3d 79, 81 (2d Cir.2001) (bad checks); *United States v. Willis,* 102 F.3d 1078, 1083–84 (10th Cir.1996) (theft from an ATM). A discussion of bank theft in this case would have lacked probative value and presented a risk of confusing the jurors about the charged crime and about whether Mr. Bradshaw would face punishment for his actions if acquitted. Therefore, the district court properly excluded evidence and instruction regarding bank theft.

█ The proposed argument and instruction additionally were improper because they suggested that the jury should second-guess the prosecution's internal charging decisions. Within constitutional constraints not implicated here (for example equal protection problems), the government can charge and take to trial any offense for which it has probable cause and thinks it can prove beyond a reasonable doubt. *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." (internal quotation marks omitted)); *United States v. Curtis,* 344 F.3d 1057, 1064 (10th Cir. 2003) ("It is settled law that as long as a prosecutor's charging decision is not based on an impermissible factor such as race, [sex, religion, or exercise of a statutory or

constitutional right,] which is not alleged by Defendant in this case, a prosecutor may exercise broad discretion with respect to his charging decisions.").

 When a defendant's conduct violates more than one criminal statute, the government may prosecute under either (or both, for that matter, subject to limitations on conviction and punishment). *See Ball v. United States*, 470 U.S. 856, 859–61, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). As the Supreme Court noted in *Ball*, "the Government [has] broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case." 470 U.S. at 859, 105 S.Ct. 1668. The accused has no right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution. Absent certain allegations of impropriety, it is not the role of the jury (or the judge) to decide whether the government has charged the correct crime, but only to decide if the government has proved the crime it charged. *See United States v. Kysar*, 459 F.2d 422, 424 (10th Cir.1972) ("[The United States Attorney] has the power to prosecute or not to prosecute; this decision is not reviewable by any court."). By offering the jury instruction and proposing to produce evidence of his admission to bank theft, Mr. Bradshaw, in purpose and effect, sought to have the jury choose between the charged offense and an uncharged offense more to his liking (but not lesser included). Thus, the argument not only risked confusing the jury, but also risked infringing on the executive branch's separate power to choose which offense to charge. *See Armstrong*, 517 U.S. at 464, 116 S.Ct. 1480 (citing U.S. Const. Art. II, § 3).

Without discussing bank theft, Mr. Bradshaw had an adequate opportunity to present his defense. If the jury did not believe he intimidated the teller, it should have simply acquitted him of the charge.

## III. CONCLUSION

Thus, we hold the district court did not abuse its discretion both in admitting Mr. Bradshaw's BB gun into evidence and in refusing to instruct or allow evidence regarding the uncharged crime of bank theft. We AFFIRM.