FILED
United States Court of Appeals
Tenth Circuit

December 17, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SKOSHI THEDFORD FARR,

    Defendant-Appellant.

No. 11-6294

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:CR-08-0271-F-1)**

---

Mack K. Martin, Martin Law Office, Oklahoma City, Oklahoma, for Defendant-Appellant.

Suzanne Mitchell, Assistant United States Attorney, (Sanford C. Coats, United States Attorney, and Susan Dickerson Cox, Assistant United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **HOLLOWAY** and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

Defendant Skoshi Farr was convicted by a jury of violating 26 U.S.C. § 7201 for willfully failing to pay a trust fund recovery penalty that the Internal Revenue Service assessed against her after she, as the manager of an alternative

medical clinic, failed to pay quarterly employment taxes owed by the clinic. Farr

now appeals her conviction, contending she was denied her Sixth Amendment

right to a fair trial by the district court's rulings which permitted the admission of

Rule 404(b) evidence. She also contends the district court erred in denying her

motion for judgment of acquittal, which argued that the government's evidence

was insufficient to support a conviction, and in denying her motion to dismiss the

indictment for failure to charge the offense under the appropriate statute. Finally,

Farr contends her prosecution in this case was barred by the Double Jeopardy

Clause as a result of the government's prior unsuccessful prosecution. We

exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I

This is the third appeal to this court involving Farr and the government. In

the two prior appeals, we described the facts that led to federal criminal

proceedings initially being brought against Farr, as well as the events that

transpired at Farr's initial trial:

> From 1984 through 1999, . . . Farr served as the general manager
> or administrator of her husband's alternative medicine clinic in
> Oklahoma City, which he operated from 1978 until his death in
> December 1998. Apparently to avoid Internal Revenue Service
> ("IRS") scrutiny and collection efforts, the clinic used several names
> and associated tax identification numbers over the years, operating
> variously as "Genesis Medical Center," "Crossroads Unlimited
> Trust," and "ATHA-Genesis." Throughout its years of operation, the
> clinic filed quarterly federal tax returns (IRS Form 941) reporting
> wages paid and federal taxes withheld for employees, but failed
> conspicuously to pay those withheld quarterly employment taxes over

2

to the federal government. The clinic's ever-changing name and tax identification number aided its efforts to avoid detection, making it difficult for IRS revenue officers to locate assets for the collection of the delinquent employment taxes.

The IRS is, of course, hardly without recourse in such circumstances. * * * In [particular], 26 U.S.C. § 6672 allows the IRS, in effect, to pierce the corporate veil and proceed against individual officers or employees responsible for collecting the offending company's quarterly employment taxes. Specifically, Section 6672 provides that the officers or employees who, on behalf of an employer, are responsible for collecting withholding taxes and paying them over to the government, and who willfully fail to do so, may be personally assessed a civil penalty equal to the amount of the delinquent taxes. (footnote and citations omitted). This is exactly how the IRS proceeded in this case, assessing a Section 6672 "trust fund recovery penalty" against . . . Farr, as the person allegedly responsible for turning over the clinic's withheld quarterly employment taxes to the government.

When . . . Farr did not pay the penalty assessed against her, a civil proceeding evolved into a criminal one. The government sought and received an indictment in August 2006 against . . . Farr. Specifically, the grand jury charged . . . Farr under 26 U.S.C. § 7201, a generic tax evasion provision providing that

> [a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

Significantly . . . , however, the government chose . . . not to seek a broad indictment simply reciting the generic language of Section 7201, but instead deliberately added additional detail to its charge. As adopted by the grand jury, the indictment alleged, in pertinent measure,

3

[t]hat beginning on or about the 12th day of November, 2001, and continuing until the present, in the Western District of Oklahoma and elsewhere, SKOSHI THEDFORD FARR, the defendant herein, a resident of Oklahoma City, Oklahoma, and Grants Pass, Oregon, did willfully attempt to evade and defeat the payment of the quarterly employment tax for ATHA-Genesis Chapter due and owing by her to the United States of America for the quarters 6-99, 9-99, and 12-99 in the amount of $72,076.21 by concealing and attempting to conceal from the Internal Revenue Service the nature and extent of her assets and the location thereof and placing funds and property in the names of nominees. All in violation of Title 26, United States Code, Section 7201.

United States v. Farr, 536 F.3d 1174, 1176-78 (10th Cir. 2008) (Farr I).

At trial, the government only presented evidence that Farr was personally assessed and failed to pay a "trust fund recovery penalty." Recognizing the indictment did not cover Farr's failure to pay a trust fund recovery penalty, the district court instructed the jury, as a matter of law, that the "[t]rust [f]und [r]ecovery [p]enalty assessed against the defendant [wa]s to be treated as equivalent of the quarterly employment tax referred to in . . . the indictment." The jury convicted Farr, who appealed her conviction.

[In Farr I, we] concluded that the trial proceedings effected a constructive amendment of the indictment. We explained that while the indictment charged Farr with failing to pay quarterly employment taxes, the government's own witnesses indicated that only the employer is liable for quarterly employment taxes and Farr was never the employer. In light of this, the government sought to proceed against Farr for failing to pay the trust fund recovery penalty, and the district court in its jury instruction "effectively allowed the jury to convict Ms. Farr for failing to pay either the clinic's quarterly employment taxes purportedly 'due and owing by her' or the trust fund recovery penalty assessed personally against her."

We went on to explain that had the government simply charged Farr generically under § 7201 with the willful evasion of a tax it could have proven its case against her using either theory. Instead,

4

since it included particulars about the nature of the tax, the particulars of the tax became an essential and delimiting part of the charge itself. Consequently, we reversed and remanded the case for a new trial.

Based on this court's reversal, the district court dismissed the case.

United States v. Farr, 591 F.3d 1322, 1324 (10th Cir. 2010) (Farr II).

Following the dismissal of the original indictment, the government sought and received a new indictment charging Farr with a single count of willfully attempting to evade and defeating the payment of a trust fund recovery penalty due and owing by her, in violation of 26 U.S.C. § 7201. Farr moved to dismiss this indictment on double jeopardy grounds, but the district court denied her motion. Farr filed an interlocutory appeal with this court. We affirmed the district court's decision and remanded the matter to the district court for further proceedings. Farr II, 591 F.3d at 1323, 1326.

The case proceeded to trial on February 22, 2011. At the conclusion of the evidence, the jury found Farr guilty as charged in the indictment. The district court subsequently sentenced Farr to a term of imprisonment of thirty-three months, and to pay restitution to the government in the amount of $72,076.21.

Farr now appeals.

II

**A. Admission of Rule 404(b) evidence**

In her first issue on appeal, Farr contends that the district court wrongly

5

admitted evidence of prior bad acts under Federal Rule of Evidence 404(b). Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is inadmissible to prove the character of the accused, but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This court imposes four requirements for evidence to be admitted under Rule 404(b):

> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

United States v. Diaz, 679 F.3d 1183, 1190 (10th Cir. 2012). "Admission of evidence under [Rule] 404(b) is reviewed under an abuse of discretion standard." Id. (internal quotation marks omitted).

Farr contends that the challenged evidence failed to satisfy the second of these requirements, i.e., relevancy.[1] Generally speaking, Farr argues, the evidence admitted by the district court was "unrelated to the substantive charges." Aplt. Br. at 21 (capitalization in original omitted). And, she argues, "[t]he

_____

[1] As for the remaining three requirements, it is undisputed that the government sought admission of the Rule 404(b) evidence to prove Farr's intent to avoid paying the trust fund recovery penalty at issue, the district court made a Rule 403 determination that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice, and the district court, upon the request of Farr's counsel, instructed the jury regarding the limited purpose of the evidence

6

government's case [ultimately] consisted of a deluge of mini trials of acts that [she] was never charged with or had been previously acquitted of under the guise of [Rule] 404(b) evidence." Id. at 22.

Before addressing Farr's specific challenges to the relevancy of the evidence, we pause briefly to note the essential elements of the § 7201 violation that the government in this case was required to prove. The district court's Instruction Number 19, which was unchallenged by Farr, outlined those elements:

> The defendant is charged in Count One of the indictment with a violation of 26 U.S.C. § 7201. This law makes it a crime for anyone willfully to attempt to evade or defeat the payment of taxes. To find the defendant guilty of this crime you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:
>
> FIRST:     That substantial tax (the trust fund recovery penalty) was due and owing by the defendant to the federal government;
>
> SECOND:   That the defendant intended to evade and defeat payment of that tax;
>
> THIRD:     That the defendant committed an affirmative act in furtherance of her intent to evade and defeat payment of that tax; and
>
> FOURTH:    That the defendant acted willfully, that is, with the voluntary intent to violate a known legal duty.

United States v. Farr, No. 5:08-cr-00271-F, Dkt. No. 76, at 21 (W. D. Okla.). We have previously noted that "[a]ctual knowledge is a strict requirement," and that carrying the burden of proof on this element "requires the government to negate a

7

defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." United States v. Hoskins, 654 F.3d 1086, 1090 (10th Cir. 2011) (internal quotation marks and brackets omitted).

*1) Evidence of the imposition of penalties in 1984, 1985, and 1995*

Three of the government's witnesses testified that in 1984, 1985, and 1995, the IRS assessed trust fund recovery penalties against Farr and her husband arising out of their operation of their medical clinic and its related entities, and that Farr was indicted and tried, but ultimately acquitted, of failing to pay the 1995 penalties. Farr argues on appeal that "[t]he 1984 and 1985 penalty assessments clearly are not close to the time of the crime charged" and "also relate to a state of events that occurred during the lifetime of [her] husband, Dr. Farr[,] who owned and ran the" clinic. Aplt. Br. at 25. Thus, she argues, "[t]hese events have no real probative value." Id. at 26. And, as for her 1995 prosecution and acquittal, she argues that it bore no relevance for purposes of proving her intent in this case.

We agree with the government, however, that this evidence was relevant for purposes of establishing intent and, relatedly, to refute Farr's assertions that she was unaware of the trust fund recovery penalty at issue in this case. Although it is true that the 1984 and 1985 penalties were assessed substantially prior to the penalties at issue in this case, the nature of the penalties was virtually identical.

8

Specifically, the penalties were imposed on Farr and her husband, as the owners and operators of their clinic, due to their failure to pay quarterly employment taxes that they actually withheld from their employees' wages. Likewise, the 1995 penalties, and Farr's related criminal proceedings, arose out of the same type of conduct. Consequently, this evidence was indeed relevant for purposes of establishing that Farr acted willfully in failing to pay the penalty at issue in this case.

*2) Pyramiding*

Farr next complains about testimony from two IRS agents regarding "pyramiding," i.e., the fact that the clinic operated by Farr and her husband repeatedly changed its name between 1978 and 1999 and was operated by a series of different entities. According to the IRS agents, the following pattern developed: the entity operating the clinic would fail to pay quarterly employment taxes and incur substantial tax liabilities (including, at times, trust fund recovery penalties); rather than paying those liabilities, the entity would be abandoned and a new one, with a new tax identification number, would take its place for purposes of operating the clinic.

According to Farr, "[t]he alleged pyramiding occurred years ago and related to a time when [Farr's husband] was the owner and operator of the" clinic. Aplt. Br. at 27. Farr further argues that "the government made no[] attempt or effort to link the pyramiding to [her]." Id.

9

Farr is clearly mistaken on these points. The government's evidence established that at some point between 1978 and 1983, Farr assumed responsibility for managing the business operations of the clinic and, consequently, the payment of quarterly employment taxes. In turn, the evidence established that, thereafter, trust fund recovery penalties were repeatedly assessed against Farr in connection with the various entities that purportedly owned the clinic. In short, the evidence established that Farr repeatedly failed to pay the quarterly employment taxes and, rather than making good on those tax liabilities, instead assisted in forming new entities to assume ownership and operation of the clinic. Thus, contrary to Farr's assertions, the government's evidence clearly linked her to the so-called pyramiding. In turn, this evidence was relevant for purposes of establishing that Farr intended to evade and defeat the payment of the trust fund recovery penalty at issue in this case.

*3) 1998 personal bankruptcy*

Kimberly Brauer, an IRS revenue agent, testified that in February 1998, Farr and her husband filed a voluntary petition of bankruptcy and listed on their related schedules unpaid and unsecured trust fund recovery penalties from 1984 through 1995. Brauer explained that the filing of the Farrs' bankruptcy petition would have temporarily halted any IRS efforts to collect on those penalties.

Farr argues on appeal that this evidence "ha[d] no purpose or relevance relating to the" penalties at issue in this case. Aplt. Br. at 29. In support, she

10

argues that "no collection efforts were ever initiated by the IRS for the 2001 trust fund recovery penalty [at issue in this case] during the 10 months that was available prior to the initiation of [IRS internal] controls stopping notification and collection efforts." Id.

We conclude, however, that this evidence was relevant for purposes of establishing Farr's general awareness of trust fund recovery penalties and how they operated, as well as establishing her intent not to pay the 1999 quarterly employment taxes and the resulting trust fund recovery penalty.

*4) 1999 day sheets - skimming of cash*

Susan Barnes, who worked for Farr at the medical clinic, testified that the clinic did not accept insurance and that, consequently, patients would pay by check, credit card, or cash. Barnes further testified that only Farr had access to the clinic's cash drawer. Lastly, Barnes testified that Farr often paid her and the other clinic employees in cash, and that in doing so Farr deducted employment and other taxes from their wages. IRS case agent Mike Favors in turn testified that during 1999, the clinic took in approximately $42,907.33 in cash receipts, but those receipts were never deposited into the clinic's bank account, nor reported on the clinic's tax return for 1999.

Farr argues on appeal that Favors' testimony in this regard "could be for no[] other purpose tha[n] to establish [her] propensity for committing crimes." Aplt. Br. at 30. In support, she notes that "[e]ven though there was never a

11

showing that [she] was duty bound to file the tax return for the clinic, the evidence was that [she] and the clinic for all practical purposes were one and the same." Id.

We reject Farr's arguments. As the government suggests, the evidence was relevant for purposes of establishing that Farr intended to evade payment of the quarterly employment taxes and resulting trust fund recovery penalty, and that she willfully committed an affirmative act, i.e., concealment of her financial assets, in furtherance of that intent.

*5) Purchase and sale of Norma Lessman property*

Through the testimony of Farr's son, Kevin Sellers, and IRS case agent, Mike Favors, the government established that during the 1990s, Farr and her husband leased, with an option to purchase, a home in south Oklahoma City. The home was owned by a woman named Norma Lessman. In 1999, the evidence established, Farr was living in the home and paying approximately $4,750 per month to Lessman, with $750 of each payment allocated to rent and the remaining $4,000 allocated to the option. In October 2000, Farr's son, Sellers, purchased the home from Lessman for a total of $289,000, with Lessman granting Sellers the $222,951 in equity that the Farrs had accumulated during their years living in the home. Simultaneously with that purchase, Farr signed a document purportedly gifting her interest in the home equity to Sellers. Sellers never lived in the home and instead rented it to a third party. Less than a year later, on July 31, 2001,

12

Sellers sold the home on the open market and received settlement proceeds of $189,031.61.

Although Sellers initially deposited those proceeds into his personal checking account, he soon thereafter transferred a substantial portion of the proceeds to a bank account held by a corporation called Trinity Management and Consulting (Trinity). The evidence established that Trinity, which was nominally owned by Sellers, his sister and his stepbrother, was formed by Farr in November 2000, shortly after Sellers' purchase of the Lessman home. Likewise, Farr established Trinity's bank account by making an initial deposit into it using funds from a business she owned called Bio Pro. During Sellers' brief ownership of the home, the mortgage payments were drawn on Trinity's bank account, with the checks being completed by Farr and signed by Sellers or his sister. Most significantly, the evidence established that both during and after Sellers' ownership of the home, Farr used the Trinity bank account, and the proceeds from the sale of the home, to pay her own personal living expenses.

Farr argues on appeal that this evidence should not have been admitted because it established that she "was not the actor in this instance," i.e., "[s]he never purchased the residence and did not execute any of the loan documents necessary for the purchase of the property." Aplt. Br. at 31. But while it is true that Farr was not the direct purchaser of the home and did not directly obtain a mortgage for the purchase of the home, the evidence firmly established that Farr

13

effectively instigated the purchase and ultimately benefitted from it by obtaining and using the sale proceeds for her own personal use. More importantly, this evidence was clearly relevant for purposes of establishing Farr's intent to avoid paying the trust fund recovery penalty at issue because it demonstrated that, during the time period relevant to that penalty, she had secret access to a significant amount of money, but failed to use any of it to pay the penalty. Lastly, it established her willful commission of affirmative acts in furtherance of that intent.

*6) Grant for the International Bio-Oxidative Medicine Foundation*

Government witness Doug Carlson, who was employed by the United States Department of Housing and Urban Development (HUD), testified that in 2001 he was involved in the supervision of a grant given by HUD to an Oregon-based organization called the International Bio-Oxidative Medicine Foundation (IBMF). Carlson testified that Farr was the executive director of IBMF and the person responsible for submitting the grant application. Carlson testified that the purpose of the grant was to examine the possibility of developing a medical clinic and housing for retirement-aged people living in Grants Pass, Oregon. According to Carlson, Farr was the person authorized on IBMF's behalf to draw from the grant funds. And, Carlson testified, between December 2001 and April 2003, Farr obtained a total of $149,788 in grant funds, some of which was paid to Farr for "consulting fees" and salary. The consulting fees paid to Farr (which totaled

14

$36,000), Carlson testified, were discovered by HUD during a performance review of the grant. Carlson testified that, because consulting fees were not allowed under the terms of the grant, Farr was asked to repay the consulting fees to HUD, but she failed to do so. Carlson also testified that IBMF was ultimately asked to repay approximately $105,000 of the grant funds it received, but it never did so.

Farr argues on appeal that this evidence was irrelevant because it did not establish "bad conduct or bad acts or other crimes other tha[n] a veiled statement by [Carlson] that the government sought the return of $36,000.00 of the grant money." Aplt. Br. at 31. Moreover, Farr argues, "[t]here was absolutely nothing in [Carlson's] testimony or [the related] arguments presented by the government to indicate how this evidence was probative of any issue in the case." Id. at 32. "At best," she asserts, "the government wanted the jury to presume that [IBMF] for all purposes was [Farr] and that the seeking the return of approximately $36,000.00 was evidence of [her] propensity to commit crimes." Id.

We reject Farr's arguments and conclude that the evidence was properly admitted. In late 2000, Farr and her attorney met with IRS revenue agent Ray Orren. During that meeting, Orren asked Farr about her income and assets, and Farr in turn told Orren that she expected her sole income during 2001 to be a $36,000 salary from her work at the medical clinic. Farr said nothing to Orren about her role as executive director of IBMF or the federal grant that IBMF would

15

receive. Consequently, Carlson's testimony about Farr's role with IBMF and the funds she received from the grant was relevant for purposes of establishing Farr's intent to deceive the IRS and evade both the unpaid employment taxes and the resulting trust fund recovery penalty. Moreover, the evidence established that Farr personally used some of the grant funds during the time period following imposition of the trust fund recovery penalty, and did so in a manner that was evasive. Specifically, Farr deposited some of the grant funds into the Trinity bank account, and in turn used the Trinity bank account to pay her own personal expenses. We agree with the government that "a jury could easily infer [from this evidence] that [Farr] was hiding something" and willfully failed to use the salary and consulting fees she received from the grant to pay" the trust fund recovery penalty. Aplee. Br. at 33.

*7) Testimony of IRS case agent Mike Favors*

Lastly, Farr complains that IRS case agent Mike Favors was allowed to testify about (a) Farr's personal use of a bank account belonging to an entity called Paradise Properties, and (b) Farr's receipt of a $100,000 loan from friends, her placement of those loan proceeds into the Trinity bank account, and her subsequent failure to use any of the loan proceeds to pay the trust fund recovery penalty.

We conclude that, like the other 404(b) evidence objected to by Farr, both of these topics were relevant for purposes of establishing Farr's willful failure to

16

pay the trust fund recovery penalty at issue. According to Favors' testimony, Paradise Properties was a business trust established by Farr and her husband in the mid-1990s. From at least 1999 through May 2002 (after the assessment of the Trust Fund Recovery Penalties at issue), Farr used a bank account held by Paradise Properties for her own personal use (e.g, for paying her rent, utility bills, and church tithing). At no time did Farr use any of the funds from that account to pay the trust fund recovery penalty. And, when Farr was interviewed by IRS revenue agent Orren, she disclosed to him that she used a bank account at "SW Bank," but failed to explain that this account was actually owned by Paradise Properties. When Farr learned of the criminal investigation in this case, she established the Trinity bank account and began using that to pay her personal expenses from. Finally, after establishing the Trinity bank account, Farr obtained a $100,000 loan from friends, deposited the proceeds into the Trinity bank account, and proceeded to use the funds for her Bio-Pro business, to pay her tax attorney, and to pay some income tax liabilities stemming from 2005. Together, all of this evidence clearly would have assisted the jury in finding that Farr was attempting to hide assets and income from the IRS and that she acted willfully in failing to pay the trust fund recovery penalty.

## B. Denial of motion for judgment of acquittal

In her second issue on appeal, Farr contends that the district court erred by not entering a judgment of acquittal on the grounds that the government failed to

17

provide sufficient evidence to meet its burden of showing that she willfully evaded or attempted to evade and defeat the payment of the trust fund recovery penalty. "We review de novo a district court's denial of a defendant's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29." United States v. Franco-Lopez, 687 F.3d 1222, 1226 (10th Cir. 2012). "Reversal is only appropriate if no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." Id. "When conducting this review, we must consider the evidence adduced at trial in the light most favorable to the government." Id.

"To obtain a conviction for [tax] evasion [under § 7201], the government must prove three elements: 1) the existence of a substantial tax liability, 2) willfulness, and 3) an affirmative act constituting an evasion or attempted evasion of the tax." United States v. Chisum, 502 F.3d 1202, 1244 (10th Cir. 2007) (internal quotation marks omitted). In this case, Farr does not seriously dispute that the government's evidence established the first of these elements (and, in any event, the government's evidence clearly established that Farr owed a substantial tax liability to the government). But she does challenge the sufficiency of the evidence with respect to the last two elements. Ironically, the very evidence Farr contends was improperly admitted under Rule 404(b) is the evidence offered by the government to establish willful tax evasion and the affirmative acts Farr took to accomplish that evasion.

18

Reviewing the evidence presented at trial in the light most favorable to the government, it is quite clear that a rational trier of fact could have found that Farr willfully evaded the trust fund recovery penalty and took affirmative steps to do so. In November 2000, Farr met with IRS revenue agent Orren to discuss the clinic's unpaid employment taxes for 1999. During that meeting, Farr was less than forthcoming. In particular, she provided Orren with an unrealistically low, and indeed false, estimate of her likely 2001 income, failed to reveal the fact that she was leasing an expensive automobile, and also failed to reveal that she was using Paradise Properties' bank account to pay her own personal expenses. Shortly after this meeting with Orren, Farr began using Trinity's bank account, which she had just established, as a source for deposits of income and to pay her personal living expenses. In August 2001, the IRS mailed to Farr and her accountant, Ken Reynolds, notifications that a trust fund recovery penalty was being assessed against Farr. Although Farr thereafter continued to receive income and cash from various sources, at no time did she attempt to pay the penalty owed to the IRS. Moreover, Farr continued to attempt to conceal income and assets from the IRS by using the Trinity bank account as her own personal account.

In connection with her challenge to the sufficiency of the evidence, Farr also asserts, in passing, that IRS case agent Favors was a summary witness who, at bottom, offered a substantial amount of lay opinion testimony that should have been ruled inadmissible by the district court. Because, however, Farr did not

19

assert any such objection to Favors' testimony at trial, her arguments in this regard are reviewed only for plain error. United States v. Bagby, — F.3d —, 2012 WL 4902919 at *6 (10th Cir. 2012) ("Where, as here, the defendant failed to object to the admission of evidence at trial, this Court reviews only for plain error."). "Plain error is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

Even assuming, for purposes of argument, that Farr could satisfy the first two prongs of the plain error test, she cannot demonstrate, and indeed has not even attempted to demonstrate, that the admission of Favors' testimony affected her substantial rights. At most, she asserts that "[n]o reasonable jury could have found that [she] acted affirmatively to evade the payment of the penalty without piling inference upon inference." Aplt. Br. at 40. But that is simply untrue. Although the government presented no direct evidence of Farr's intent to avoid paying the trust fund recovery penalty, it presented a wealth of circumstantial evidence firmly suggesting that Farr was well aware of the penalty, and that she willfully took steps over an extended period of time in order to avoid paying the penalty. Consequently, we conclude that the district court did not commit plain error in admitting Favors' testimony.

## C.  Failure to dismiss the indictment

In her third issue on appeal, Farr asserts that the district court erred by denying her pretrial motion to dismiss the indictment for failure to charge the offense under the appropriate statute.  In assessing the denial of a motion to dismiss an indictment on legal grounds, we review the district court's decision de novo.  United States v. Ambort, 405 F.3d 1109, 1116 (10th Cir. 2005).

Farr argues, as she did in her motion to dismiss, that the Internal Revenue Code (IRC) "provides a specific criminal penalty for those responsible for collecting and paying trust fund taxes who willfully fail to do so under § 7202." App. at 29-30.  She argues that the indictment should therefore have charged her with violating § 7202 rather than § 7201.  In support, she asserts that "[w]hile ordinarily the government is free to charge under whatever statute it deems appropriate under the facts in question, when Congress sets forth provisions governing the duties, penalties, and procedures with respect to specific conduct or individuals as it did in Section[] 7202 . . . , the government may not ignore th[at] provision[] specifically deemed by Congress to be the appropriate vehicle under which to impose prosecution, simply because it favors another better."  Id. at 31.

In addressing Farr's arguments, we begin by revisiting our explanation in Farr I of how quarterly employment taxes are collected and paid.  The IRC "requires 'employer[s]' to deduct from their employees' wages the employees' share of FICA and individual income taxes."  Farr I, 536 F.3d at 1176 (quoting 26

21

U.S.C. § 3102(a)). "The employer is liable for the withheld portion of the employees' payroll taxes and must pay over the full amount to the government each quarter." Id. (citing 26 U.S.C. § 3403). "These withheld amounts are considered to be held in a 'special fund in trust for the United States' after collection each pay period until they are remitted to the government." Id. (citing 26 U.S.C. § 7501). "After the employer pays net wages to its employees, the withheld taxes are credited to the employees regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment." Id. (internal quotation marks and italics omitted).

If an employer fails to pay the withheld employment taxes as required by the IRC, the IRS can "pierce the corporate veil and proceed against individual officers or employees responsible for collecting the offending [employer]'s quarterly employment taxes." Id. at 1177. In particular, the IRS can, under 26 U.S.C. § 6672, assess against such persons "a civil penalty equal to the amount of the delinquent taxes," i.e., a Trust Fund Recovery Penalty. Id. The IRS can also seek criminal penalties against such persons under 26 U.S.C. § 7202, which provides as follows:

> Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall . . . be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

22

26 U.S.C. § 7202. Or the IRS can, as it did in this case, first assess trust fund recovery penalties and then, if the persons against whom those penalties are assessed willfully fail to pay those penalties, proceed criminally against those persons under the generic tax evasion provision, 26 U.S.C. § 7201, which provides as follows:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

26 U.S.C. § 7201.

In light of this framework, it is apparent that Farr's attack on the indictment lacks merit. While the government undoubtedly could have charged Farr with violating § 7202, the focus of such a charge would have been different than the § 7201 charge alleged in the indictment. Given the clear language of § 7202, charging Farr thereunder would necessarily have had to focus on her obligation "to collect, account for, and pay over" the medical clinic's quarterly employment taxes for the 1999 tax year. In contrast, the § 7201 violation actually charged in the indictment focused on a related, but different obligation, i.e., Farr's obligation to pay the trust fund recovery penalty that was assessed against her under 26 U.S.C. § 6672 for failing to pay the medical clinic's quarterly employment taxes for the 1999 tax year.

Moreover, case law fully supports, rather than undercuts, the government's decision to indict Farr under § 7201 rather than § 7202. To begin with, it is well established that "[c]harging decisions are primarily a matter of discretion for the prosecution," United States v. Robertson, 45 F.3d 1423, 1437 (10th Cir. 1995), and such "discretion is nearly absolute," id. at 1438. Consequently, "[w]hen a defendant's conduct violates more than one criminal statute, the government may prosecute under either (or both, for that matter, subject to limitations on conviction and punishment)." United States v. Bradshaw, 580 F.3d 1129, 1136 (10th Cir. 2009). And, "[a]bsent certain allegations of impropriety, it is not the role of the jury (or the judge) to decide whether the government has charged the correct crime, but only to decide if the government has proved the crime it charged." Id. Finally, Farr cites to no statutory provision or case law that would have, notwithstanding these general rules, required the government in this case to have charged her under § 7202 rather than § 7201. Thus, in sum, we conclude that the district court properly denied Farr's motion to dismiss the indictment.

**D. Double Jeopardy**

In her fourth and final issue on appeal, Farr contends that the Fifth Amendment Double Jeopardy Clause prohibited her from being placed in jeopardy twice for the same offense. As the government correctly asserts in its appellate response brief, however, the law of the case doctrine bars this claim.

Farr first raised her double jeopardy argument in a pretrial motion to

24

dismiss the indictment. App. at 16. The district court denied Farr's motion in an order issued on January 28, 2009. Id. at 47. Rather than proceeding to trial, Farr filed an interlocutory appeal challenging the district court's denial of her motion. This court affirmed the district court's decision, concluding that "Farr ha[d] failed to show that her right to be free from double jeopardy [wa]s implicated by her current charges." Farr II, 591 F.3d at 1326. Consequently, the case was remanded to the district court for trial. Id.

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. LaHue, 261 F.3d 993, 1010-11 (10th Cir. 2001). Because, as noted, this court in Farr II considered and rejected the same double jeopardy argument that Farr now asserts, we are "precluded from reconsidering this issue, and [Farr] is not entitled to relief." United States v. Irving, 665 F.3d 1184, 1193 (10th Cir. 2011).

AFFIRMED.

11-6294 - *United States v. Farr*

**HARTZ**, Circuit Judge, concurring:


I concur in the result and join all of Chief Judge Briscoe's opinion except Section II(C). To reject Farr's challenge to the indictment, no analysis is required beyond what is in the final paragraph of Section II(C): "When a defendant's conduct violates more than one criminal statute, the government may prosecute under either." *United States v. Bradshaw*, 580 F.3d 1129, 1136 (10th Cir. 2009). Because Farr was properly charged and convicted of a violation of 26 U.S.C. § 7201, it is unnecessary to discuss the meaning of § 7202.