**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 25, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TIMOTHY MCGLOTHIN,

    Defendant - Appellant.

No. 11-1360
(D.C. No. 1:10-CR-00605-LTB-1)

_____

**ORDER**
_____

Before **HARTZ**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.
_____

The panel grants Appellant's petition for panel rehearing for the limited purpose of

changing the word "completely" on page 23 of the slip opinion to "substantially."

The petition for rehearing en banc was transmitted to all of the judges of the court

who are in regular active service.  As no member of the panel and no judge in regular

active service on the court requested that the court be polled, that petition is denied.

The revised opinion is being entered nunc pro tunc to the original filing date,

January 24, 2013.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 24, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TIMOTHY McGLOTHIN,

Defendant - Appellant.

No. 11-1360

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:10-CR-00605-LTB-1)**

Gail K. Johnson, Johnson & Brennan, PLLC, Boulder, Colorado, for Defendant - Appellant.

James C. Murphy, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff - Appellee.

Before **HARTZ**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

**MURPHY**, Circuit Judge.

A jury found Timothy McGlothin guilty of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On appeal McGlothin asserts the district court erred in admitting at trial evidence of past instances in which he possessed a firearm. *See* Fed.

R. Evid. 404(b); Fed. R. Evid. 403. McGlothin forfeited these arguments by failing to properly raise them before the district court and cannot satisfy the exacting plain-error standard. *See United States v. Frost*, 684 F.3d 963, 971 (10th Cir. 2012) ("Because [defendant] did not object to the admission of the challenged testimony at trial, we review the district court's decision only for plain error."); *id.* at 971-72 (noting the plain-error standard is "difficult to overcome"). Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the district court's judgment of conviction.

## I. BACKGROUND

### A. Events Leading to Arrest and Prosecution

McGlothin's indictment on § 922(g)(1) charges originated from an indictment on unrelated bank robbery charges. Efforts to locate and arrest McGlothin on the bank robbery charges were initially unsuccessful. Based on a tip McGlothin might be staying in an apartment in Denver, Detective Jeffrey Hart went to the leasing office to gather information. While there, he happened upon Darwin Ritchie, the named lessee of the apartment. Ritchie confirmed McGlothin was staying there and gave law enforcement officers permission to search the apartment. Officers found McGlothin and his cousin, Darleise Paden, in the apartment and arrested them. Officers searched the apartment, which had two bedrooms (one furnished and one empty). In a closet in the furnished bedroom, officers found a loaded Glock pistol. In that same closet, Officers also found men's clothing, a New York Yankees baseball cap, a stack of two-dollar bills, and two

2

letters addressed to McGlothin. McGlothin was ultimately indicted for possessing the Glock in violation of § 922(g)(1).[1]

## B. Pretrial Proceedings

Prior to trial, McGlothin requested notice of the government's intention to utilize evidence potentially falling within the parameters of Fed. R. Evid. 404(b). In response, the government identified two prior instances during which McGlothin possessed a handgun. The first of these instances, the "2007 Incident," involved the simple possession of a loaded handgun. The 2007 Incident led to McGlothin's conviction on Colorado state charges of illegal possession of a firearm by a felon. *See* Colo. Rev. Stat. § 18-12-108. The second instance, the "2009 Incident," involved an assault by McGlothin on Ersel Waits. During the assault, McGlothin repeatedly hit Waits on the head with a pistol. The government argued these prior acts were relevant to, inter alia, the issue of McGlothin's identity as the knowing possessor of the Glock. The government further argued admission of evidence relating to these incidents was consistent with the four-part test utilized by this court to evaluate the admissibility of Rule 404(b) evidence. *See United States v. Diaz*, 679 F.3d 1183, 1190 (10th Cir. 2012).

McGlothin moved in limine to exclude the 2007 and 2009 Incidents. He argued neither incident was relevant to the question whether he constructively possessed the Glock. Instead, according to McGlothin, the evidence would be offered to show mere

---

[1]The unrelated indictment charging McGlothin with bank robbery was dismissed when his co-defendant refused to testify against him.

propensity.  *See* Fed. R. Evid. 404(b).  Finally, even assuming relevance of the 2007 and 2009 Incidents, McGlothin asserted the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.

The district court rejected McGlothin's contentions and concluded the "probative value of this evidence is clear in terms of its tendency to make the existence of possession of the firearm, be it actual or constructive, more probable than it would be without the evidence."  It further concluded the "heightened relevancy in this case under a constructive-possession theory of the prosecution" was not "substantially . . . outweighed by the potential for unfair prejudice."  Nevertheless, the district court concluded "relevancy determinations in the final analysis should take place in the context of the trial itself."  Accordingly, the court "conditionally denied" the motion in limine, reserving a final ruling until trial.

## C. Trial Evidence

### 1.  Offense Conduct

Ritchie testified that before he rented the apartment it was completely empty, specifically including the closet where the Glock was found.  McGlothin moved into the apartment shortly after it was rented by Ritchie.[2]  Ritchie did not keep clothes at the apartment because he only stayed there "probably twice a week."  He specifically testified

---

[2]Ritchie allowed McGlothin to move into the apartment "to help[] him out." Ritchie described McGlothin as a "good friend" who helped him out with money and jobs when Ritchie was "basically homeless."

4

that none of the items in the closet where the Glock was found belonged to him. Ritchie spent most of his time at his "sister's and mother's house." Although Ritchie only stayed at the apartment infrequently, he testified McGlothin appeared to be using the apartment as a permanent residence. On those occasions he did stay at the apartment, Ritchie either slept on the couch or in the empty bedroom because the furnished bedroom was "Tim's bedroom." All the furnishings in the apartment, particularly including the furnishings in the bedroom where the Glock was found, were purchased by McGlothin. As far as Ritchie was aware, no one besides McGlothin and Paden stayed at the apartment. Ritchie and McGlothin were the only people with a key to the apartment. Finally, although he could legally possess a firearm, Ritchie testified he did not own the Glock.

Thomas Acierno, a Jefferson County Sheriff's Office investigator, testified he found the Glock while searching the closet in the furnished bedroom. Acierno, who was specifically assigned to search the furnished bedroom, wore gloves during the entirety of the search to avoid contaminating the scene. The only clothes Acierno found in the closet were men's clothing. In close proximity to the Glock, Acierno found the following items: (1) two pieces of mail, one addressed to McGlothin personally and one addressed to a

5

communications business owned by McGlothin,[3] (2) a New York Yankees baseball cap,[4] and (3) a stack of two-dollar bills.[5]

Detective Jeffrey Hart conducted a post-arrest interview of McGlothin. The interview was recorded and portions of the recording were played for the jury. During the interview, McGlothin stated he had been staying in Ritchie's apartment at the time of his arrest, and that for most of the time he lived there nobody else stayed at or visited the apartment. McGlothin admitted during the interview that at some previous point in time he had held the Glock.[6]

## 2. Other-Crimes Evidence

As set out in its pretrial notice, the government adduced at trial evidence regarding both the 2007 and 2009 Incidents.

### a. The 2007 Incident

The government presented the testimony of two officers as to the 2007 Incident, Arapahoe County Sheriff Deputies William Foreman and Richard Van Slyke. The

---

[3]Ritchie testified McGlothin owned a cell phone store named Your Time Communications.

[4]Trial evidence demonstrated McGlothin was from New York and was known by the moniker "New York."

[5]During a post-arrest interview, McGlothin denied owning the two-dollar bills, but admitted he "did spend some of them."

[6]This admission was corroborated by the testimony of DNA expert Susan Berdine. Berdine testified the DNA of at least three persons was found on the Glock. She further testified one of the profiles was consistent with McGlothin's DNA, and the odds of finding a random, unrelated person in the general population that shared the same DNA markers as McGlothin was approximately 1 in 110,000.

officers testified they responded to a call from Paden in October of 2007. Paden informed

the officers they should look for McGlothin, a black adult male who could be found in an

older light-blue Ford Bronco. Officers drove around the immediate area looking for

McGlothin and found him in a nearby parking lot, sitting in the Bronco and talking on a

cell phone. After a records check revealed McGlothin was subject to immediate

detention, officers placed him in a police vehicle. Officers searched the Bronco and

found a loaded gun in close proximity to the driver's seat. McGlothin acknowledged the

gun was his; stated he had been drinking and his life was over; and indicated people were

out to get him, but he was not going to hurt anyone.

### b. The November 2009 Incident

The government adduced evidence relating to the 2009 Incident from Ersel Waits.

Waits testified that in November of 2009, three months before police found the Glock

during the search of Ritchie's apartment, she received a call from McGlothin asking if she

was romantically involved with Paden. McGlothin threatened to "come over and put [a]

gun down [Waits's] throat." After some additional telephone conversations, Waits

observed McGlothin approaching her apartment. She locked her door and called the

police. Waits testified McGlothin kicked in the door, approached her, and hit her on the

head several times with a black pistol.[7] Waits heard and saw the loaded clip from the

---

[7]At trial, the government showed Waits a picture of the Glock found in McGlothin's apartment. Waits testified the Glock did not "appear to be different in any way" from the pistol McGlothin used to assault her. Nevertheless, Waits could not positively say it was the same gun.

7

pistol fall to the floor as McGlothin hit her.[8]  Shortly after McGlothin left Waits's

apartment, the police arrived and took Waits to the emergency room.  It took three staples

to close the wound to Waits's head.  Waits identified a number of pictures taken after the

assault, including a picture of her with blood on the side of her face and two pictures

showing the floor marked with blood.  Each of the photos was admitted into evidence

without objection.

## II. ANALYSIS

McGlothin contends the district court erred in admitting at trial evidence of the 2007

and 2009 Incidents.  He asserts the evidence was not relevant for any permissible purpose

and was, instead, adduced to show his propensity to possess firearms.  *See* Fed. R. Evid.

---

[8]Officer James Anderson testified at trial as to the functionality of the Glock. Anderson testified the release for the clip was located on the left-hand side of the Glock's grip.  He further testified that when the clip is full of ammunition, the weight of the ammunition will cause the clip to "fall out of the bottom of the gun" as soon as the release is pressed.  Based on the testimony of Waits and Anderson, the government argued in closing as follows:

> Now, interestingly, Ms. Waits also testified that as the defendant was hitting her on the head with this firearm, the clip fell out.  It fell on the floor. . . .  She saw the clip.  She heard it fall on the floor.  And Detective Anderson . . . explained just how it is that the clip can be released from this particular Glock firearm.  He depressed this button right here on the side of the firearm (indicating).  When he depressed the firearm, the clip pops right out.

> Ask yourselves whether, as Ms. Waits was being bludgeoned on the side of the head, whether that button may have been depressed and the clip fell out. . . .

8

404(b) (limiting admission of prior bad-acts evidence to those situations not involving proof of a "person's character in order to show that on a particular occasion the person acted in accordance with the character"). Alternatively, even assuming this evidence was admissible under Rule 404(b), he argues its probative value was substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403 (allowing exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

## A. Standard of Review

This court generally reviews for abuse of discretion a decision to admit evidence under Rules 403 and 404(b). *United States v. Burgess*, 576 F.3d 1078, 1098 (10th Cir. 2009). This is only true, however, if the defendant offered up a timely and specific trial objection. Fed. R. Evid. 103(a). Absent a timely and specific objection, this court reviews such challenges for plain error. *See United States v. Jameson*, 478 F.3d 1204, 1212 (10th Cir. 2007). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Frost*, 684 F.3d at 971 (quotation omitted).

McGlothin concedes he did not object at trial to the admission of evidence regarding the 2007 Incident.[9] He asserts he did, however, object at trial to the admission of

[9]McGlothin's motion in limine did not preserve the admissibility of either incident for abuse-of-discretion review. The district court specifically labeled its denial of the motion as conditional, placing McGlothin on notice of the need to renew his objection at trial. Fed. R. Evid. 103(b); *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir.

9

evidence regarding the 2009 Incident. In support of this assertion, McGlothin points to the following limited portion of the trial transcript:

> Defense Counsel: Your Honor, I will try not to repeat myself. But our position is it is not relevant. It's uncharged misconduct. And if there is any probative value, the prejudicial effect far outweighs any relevance that exists here.
>
> The Court: Okay.
>
> Defense Counsel: You know, the issue is whether the firearm in the house was his. This alleged firearm allegedly used in the [2009 Incident] is some other firearm.

McGlothin's argument ignores the context within which the above-quoted statement was made. At the end of the second day of trial, the district court held a conference outside the presence of the jury. The government began by giving the district court a brief summary of the evidence it intended to adduce at the next day of trial, including evidence of the 2007 and 2009 Incidents and videotaped portions of McGlothin's post-arrest police interview. In response, the district court indicated it would give the jury a limiting instruction and engaged in a discussion with the parties as to the appropriate language for such an instruction. At no point during this discussion did McGlothin object to the admission of evidence relating to the 2009 Incident.

Having completed its discussion of the limiting instruction, the district court turned to an entirely different matter: the admissibility of Exhibit 19, a compilation of distinct portions of McGlothin's post-arrest police interview. Before trial, McGlothin filed a

---

1993) (holding that a motion in limine will preserve an evidentiary objection only if the motion "is ruled upon without equivocation by the trial judge").

10

written objection to the admission of Exhibit 19 on the ground that, inter alia, it contained Rule 404(b) evidence.  During the bench conference there was confusion as to whether there was any mention of the 2009 Incident in any of the clips on Exhibit 19.  The government initially stated, albeit incorrectly, that Exhibit 19 contained some discussion of the 2009 Incident.  It was within this particular context, a hearing on the admissibility of Exhibit 19, that defense counsel made the statements identified by McGlothin as preserving the admission of the 2009 Incident for abuse-of-discretion review.[10]  Given

[10]The district court and the parties having completed their discussion of the limiting instruction, the bench conference proceeded as follows:

> The Court: All right.  Now let's get into this Exhibit 19 . . . .  I went through the transcript . . . while I watched and [listened] to the DVD that plays the clips continuously.  First of all, Mr. Connor [the prosecutor], you indicated that there is some reference in this—at least I am looking at the transcript, to the [2009 Incident].

> Government: I believe that the reference that is in this transcript is actually to the [2007 Incident].

> The Court: Right.  That is what I thought . . . .  You told me there was a reference to [the 2009 Incident] in there also.

> . . . .

> Government: Then I apologize.  I am in error on that.

> The Court: That clears it up.  Okay.  And Mr. Reisch [defense counsel] has argued that essentially it is irrelevant; correct Mr. Reisch?

> Defense Counsel: That is a good summary Your

11

that context, it is not plausible to read McGlothin's brief comments about the 2009 Incident as a timely and specific objection to Waits's proposed testimony. The district court certainly did not so interpret McGlothin's comments. That is, at no point during the remainder of the bench conference did the district court discuss either the 2009 Incident or Waits's proposed testimony, let alone announce a definitive ruling on its admissibility. Instead, consistent with the purpose of that distinct portion of the bench conference, the district court definitively resolved McGlothin's pretrial objection by concluding Exhibit 19 was admissible.

McGlothin concedes he did not preserve his objections to the 2007 incident. As set out above, the snippet of transcript identified by McGlothin did not preserve his objection

Honor.

      The Court: You want to be heard further on that?

      Defense Counsel: Your Honor, I will try not to repeat myself. But our position is it is not relevant. It's uncharged misconduct. And if there is any probative value, the prejudicial effect far outweighs any relevance that exists here.

      The Court: Okay.

      Defense Counsel: You know, the issue is whether the firearm in the house was his. This alleged firearm allegedly used in the [2009 Incident] is some other firearm.

      The Court: But [the 2009 Incident] we just established is not part of [the] interview the Government seeks to play to the jury.

      Defense Counsel: That's correct.

12

to admission of the 2009 Incident, as presented exclusively through Waits's testimony.

Furthermore, McGlothin did not contemporaneously object to the admission of Waits's

testimony at the time it was adduced, i.e., when issues of the relevance, probativeness,

and potential for undue prejudice had crystalized. Accordingly, this court reviews the

admission of both the 2007 and 2009 Incidents for plain error.[11]

## B. Merits

### 1. Plain Error

To be admissible, evidence falling within the purview of Rule 404(b) must satisfy the

following four part test:

> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper
> purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403
> determination whether the probative value of the similar acts is substantially
> outweighed by its potential for unfair prejudice; and (4) the court, upon request,
> must instruct the jury that the evidence of similar acts is to be considered only for
> the limited purpose for which it was admitted.

*Diaz*, 679 F.3d at 1190 (quotation omitted). "Evidence is proper if it tends to prove,

among other things, motive, knowledge, or intent. Exclusion of evidence under Rule 403

---

[11]Ultimately, the standard makes no difference in the outcome of this case. As set out below, the district court did not err in admitting the 2007 and 2009 Incidents. More importantly, even assuming error, this court has no doubt admission of the 2007 and 2009 Incidents did not prejudice McGlothin. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (holding that the term "affects substantial rights," as used in both Federal Rule of Criminal Procedure 52(a) and 52(b), "means that the error must have been prejudicial: [i]t must have affected the outcome of the district court proceedings"). This is true no matter which party has the burden of establishing prejudice or lack thereof. *See id.* at 734-35 (holding that the government has the burden of establishing a preserved error did not prejudice the defendant-appellant, while a defendant-appellant has the burden of establishing an unpreserved error did prejudice him).

13

that is otherwise admissible under the other rules is an extraordinary remedy and should

be used sparingly." *Id.* (quotation, citation, and alteration omitted).

### a. Relevant for a Proper Purpose

McGlothin argues the 2007 and 2009 Incidents were neither offered for a proper

purpose nor relevant. This is so, he asserts, because they bear on the issue of his

knowledge only if the jury first draws an inference that in this particular case he acted in

conformity with his criminal propensity to knowingly possess weapons. McGlothin's

argument is foreclosed by *United States v. Moran*, 503 F.3d 1135 (10th Cir. 2007).

Like McGlothin, the defendant in *Moran* was prosecuted for violating § 922(g)(1). *Id.*

at 1137-39. During a traffic stop, officers observed "a rifle stock sticking out of an

unzipped rifle case" on the back seat of the car Moran was driving. *Id.* at 1139. At his

2006 trial, the government adduced evidence Moran was convicted in 1994 of "being a

felon in possession of a firearm." *Id.* at 1143. Moran asserted the admission of his 1994

firearm conviction was inconsistent with Rule 404(b). *Id.* This court rejected Moran's

arguments, first concluding the 1994 firearm conviction was offered for a proper purpose:

> The Government introduced evidence of Mr. Moran's prior conviction to prove the
> only challenged element of the felon-in-possession offense: that Mr. Moran
> "knowingly possessed" the firearm. *See United States v. Ledford*, 443 F.3d 702,
> 705 (10th Cir. 2005) (setting forth elements of crime of felon in possession). Mr.
> Moran claimed that he did not know the rifle, which belonged to his girlfriend, was
> in the SUV, his girlfriend's car. Thus, the Government presented, and the district
> court admitted, evidence of the prior conviction to show "knowledge, intent, and
> absence of mistake or accident," proper purposes under Rule 404(b).

14

*Id.* at 1144 (footnotes omitted).  *Moran* further held evidence of the prior firearm

conviction was relevant:

> In addition, the conviction is relevant . . . because it is probative to demonstrate that Mr. Moran "knowingly" possessed the firearm.  Mr. Moran denied knowledge of the rifle in the car, and the government had the burden of proving knowing possession of the firearm.  To prove the knowledge element of the offense, the government offered evidence that Mr. Moran knowingly possessed a firearm at another point in time.  Because the prior conviction required the same knowledge, evidence of the conviction had a "tendency to make the existence of" Mr. Moran's knowledge of the rifle in the present case "more probable . . . than it would be without the evidence."  Fed. R. Evid. 401.  In other words, the fact that Mr. Moran knowingly possessed a firearm in the past supports the inference that he had the same knowledge in the context of the charged offense.

*Id.* (citations omitted).  This court also rejected Moran's argument that the evidence

permitted the jury to draw impermissible inferences about his criminal propensity:

> We acknowledge that the use of Mr. Moran's prior conviction to prove knowledge involves a kind of propensity inference (i.e., because he knowingly possessed a firearm in the past, he knowingly possessed the firearm in the present case).  But the inference is specific and does not require a jury to first draw the forbidden general inference of bad character or criminal disposition; rather, it rests on a logic of improbability that recognizes that a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense.  *See United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997) (explaining that similar prior act decreases the likelihood that the charged offense was committed with innocent intent).  Moreover, when other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has "the potential impermissible side effect of allowing the jury to infer criminal propensity."  *United States v. Cherry*, 433 F.3d 698, 701 n.3 (10th Cir. 2005) (quotation omitted).  That is, such evidence may be admissible under Rule 404(b) as long as it tends to prove something other than criminal propensity.  *See United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001) ("Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." (quotation omitted)).

15

*Id.* at 1145 (citations omitted).

Thus, *Moran* makes clear that when a defendant places his intent at issue,[12] the defendant's prior acts of weapon possession are relevant for the proper purpose of demonstrating the charged act of firearm possession was knowingly undertaken.[13]

[12]To obtain a conviction for violating § 922(g)(1), the government must prove: "(1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." *Moran*, 503 F.3d at 1144 n.5 (quotation omitted). Section 922(g)(1) is a general intent crime. *Id.* at 1144 n.6. "The government need not prove any particular intent, but must show only that a felon possessed a firearm knowingly." *Id.* (quotations omitted). Thus, in the context of a prosecution under § 922(g)(1), knowledge and intent are equivalent. *Id.*

[13]*Moran*'s holding in this regard is consistent with the rule adopted in numerous other circuits. *See, e.g.*, *United States v. Halk*, 634 F.3d 482, 487 (8th Cir. 2011); *United States v. Williams*, 620 F.3d 483, 489-90 (5th Cir. 2010); *United States v. McCarson*, 527 F.3d 170, 173 (D.C. Cir 2008); *United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003). That is not to say, however, that reflexive admission of prior instances of firearm possession to prove intent is not without substantial danger. As recently noted by the Seventh Circuit,

> [e]vidence of prior, uncharged gun possessions by felons has the potential to be used for impermissible propensity purposes. We have analyzed such evidence under Rule 404(b) and have allowed it, at least where the prior possession was recent and involved the same gun. If the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably. Similarly, as the prior possession is further removed in time, it becomes less probative of possession on the date charged. Courts are familiar with this evidentiary balancing. Determinations under Rule 404(b) require such an analysis, as when applying Rule 403.

*United States v. Miller*, 673 F.3d 688, 695 (7th Cir. 2012). Were we not bound by

16

In a footnote in his brief, McGlothin asserts *Moran* is distinguishable because knowledge was at issue there, while he "admitted having held the Glock but defended on the grounds that it did not belong to him and he did not constructively possess it on or about February 10, 2010." Appellant's Br. at 21 n.2. McGlothin's argument in this regard is disingenuous. From this portion of McGlothin's brief it would appear McGlothin admitted at trial he knew the gun was present in the apartment and defended the charges solely on the bases the gun did not belong to him and he did not have the power to exercise dominion and control over the Glock. The record, however, indicates something entirely different. Prior to trial, McGlothin filed a Notice of Defenses that included a general denial and an assertion of mistake of fact. As the parties and district court recognized during the pretrial hearing on McGlothin's motion in limine, this placed the issue of McGlothin's knowledge directly at issue. Further, the issue of McGlothin's knowledge was central at trial, as defense counsel sought to develop through cross-examination of government witnesses that (1) other individuals had access to the apartment and (2) the gun was not easily found by someone casually looking into the closet. Likewise, although the prosecution argued a portion of the interview set out in Exhibit 19 amounted to an admission on the part of McGlothin that he had handled the

---

*Moran*'s conclusion that the type of evidence at issue here does not bear on "criminal disposition" within the contemplation of Rule 404(b), 503 F.3d at 1144-45, we would be inclined to adopt the approach set out by the Seventh Circuit in *Miller*. This panel is, however, bound by the decision in *Moran* absent en banc reconsideration or a superseding contrary decision by the Supreme Court. *United States v. Mendiola*, 696 F.3d 1033, 1040 (10th Cir. 2012).

weapon, McGlothin asserted during closing arguments that the statements had nothing to do with the Glock.[14]  Just as in *Moran*, McGlothin's intent to possess the Glock was the central issue at trial.  That being the case, the rule set out in *Moran* is applicable here.  Thus, the district court did not err in concluding the 2007 and 2009 Incidents were relevant to the proper purpose of demonstrating McGlothin's knowledge.

Even setting aside the propensity rationale identified as proper and relevant in *Moran*, the record makes clear the highly relevant evidence regarding the 2009 Incident was adduced for a proper purpose.  The purpose of Rule 404(b) is to prevent the use of prior

---

[14]Defense counsel argued as follows:

> Let's talk about the video.  You know, there are several instructions that say Mr. McGlothin has an absolute right not to testify; a constitutional right. . . .  Well, ladies and gentlemen, you heard what he had to say.  "Not my gun."  Because what does the instruction say?  You have to have the intention to exercise dominion or control.  Did I look at it?  Yeah, I am a guy, I looked at it.  What did he say?  "I didn't drop the clip out.  Didn't do anything."
>
> That is not possession . . . .  You have to have the intent.  Think about it.  If this was a drug case, we have all these drugs sitting up here, are we in possession of drugs because we can come over and pick it up and get it?  No.  Why?  Because we would all have to have intention . . . .
>
> Take a look at clip 2.  What the heck are they talking about there?  Completely taken out of context.  They have 1.5 hours talking with Mr. McGlothin, and this is what they bring you.  Did they ever bother to say . . . let me run to the other room, just so we are clear about what we are talking about?  Let me run to the other room and get this Glock 37 and make sure this is exactly what we are talking about.

bad acts to prove a defendant has a propensity to commit acts of that sort.  Fed. R. Evid.

404(b).  Despite McGlothin's arguments to the contrary, no reasonable juror would have

perceived the purpose of Waits's testimony for anything other than demonstrating

McGlothin possessed the Glock during a time temporally proximate to the possession

alleged in the indictment.[15]  This testimony then does not have anything to do with

propensity, either the kind identified in *Moran* or the improper kind identified in Rule

404(b).  Instead, it is circumstantial evidence that he knowingly possessed the Glock

found in his closet.  *Cf. United States v. Carter*, 695 F.3d 690, 702 (7th Cir. 2012)

---

[15]That the jury would likely have perceived Waits's testimony in this light is borne out by the way both the prosecutor and defense counsel dealt with the testimony during closing argument.  *See* supra n.8 (setting out prosecutor's arguments).  Defense counsel argued as follows:

> Now, the Government wanted to bring you Ms. Waits. This is why we have trials, ladies and gentlemen, because, once again, somebody said something, the Government believes it, it must be true.  If th[ey] say it, believe it.  We go through her cross-examination.  What did she say, yeah, this [cousin of Denise Paden, Donald,] called me.  He comes over to the house.  He comes and stands right next to me.  Then supposedly Mr. McGlothin comes over, and it's a black firearm.  And I asked her point blank, I said, is this the firearm that you said were–I can't say.

> If I didn't ask that question, who was going to? Because they wanted you to assume it's the same one.  They wanted you to assume it was Mr. McGlothin's.  Then think about it, ladies and gentlemen.  If their possession case against Mr. McGlothin was so rock solid, why did we have to bring Ms. Waits in?  Because that was November of 2009, and we are supposedly talking about February 10th.

19

("[D]efendant's possession of a gun two months prior to arrest was admissible under Rule 404(b) as circumstantial evidence of his later possession of the same gun"); *United States v. Smith*, 101 F.3d 202, 210-11 (1st Cir. 1996) (holding that evidence the defendant possessed the same weapon earlier in the evening admissible to show knowing possession of felon-in-possession charge); *United States v. Tenorio*, 312 F. App'x 122, 127 (10th Cir. 2009) (unpublished disposition cited for persuasive value pursuant to 10th Cir. R. 32.1) ("If Tenorio possessed the same gun on past occasions, it is considerably more likely that the gun still belonged to him at the time it was found in . . . [the] car and correspondingly less likely that the gun belonged to someone else or was simply there when he entered.").[16] Furthermore, given that McGlothin's trial defense was he did not own the Glock, did not know it was in the closet, and did not have the power to exercise dominion or control over it, Waits's testimony was exceedingly relevant.[17]

---

[16]Likewise, many aspects of the 2009 Incident which McGlothin argues serve no legitimate purpose are integral to Waits's ability to identify the weapon officers found in McGlothin's bedroom on February of 2010. That is, Waits's affair with Paden illuminated the reason for McGlothin's attack on Waits and, therefore, supported her assertion McGlothin was the perpetrator of the attack. Furthermore, the nature of the attack helped explain how Waits is able to identify the Glock as "not appear[ing] to be different in any way" to the one McGlothin used to attack her. Moreover, her testimony that the clip dropped to the floor during the attack, when considered in concert with the testimony of the government's functionality expert, supported the government's argument the Glock was the weapon McGlothin likely used to assault Waits.

[17]Surprisingly, the government does not defend the district court's admission of the 2009 Incident on this basis. The government's failure in this regard is of no significance, however, because this court can affirm the district court's evidentiary rulings on any basis that finds support in the record. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 665 n.11 (10th Cir. 2006).

### b. Substantially More Prejudicial Than Probative

To determine whether Rule 404(b) evidence is admissible, "the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice." *Diaz*, 679 F.3d at 1190. Evidence is unfairly prejudicial only if it makes "a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Smith*, 534 F.3d 1211, 1219 (10th Cir. 2008) (quotation omitted). The danger of unfair prejudice flowing from admission of the 2007 and 2009 Incidents did not so substantially outweigh the probative value of that evidence that the district court plainly erred in admitting the evidence under Rule 403.

The district court did not plainly err in admitting the 2007 Incident. Testimony regarding the incident was narrowly limited to the following proposition: on a given date in 2007 McGlothin knowingly possessed a firearm. *See Moran*, 503 F.3d at 1144-45 (recognizing probativeness of such evidence). There was nothing about the nature of the evidence presented that would cause the jury to decide the instant case against McGlothin on an improper emotional basis. *Smith*, 534 F.3d at 1219. Perhaps tacitly recognizing this fact, McGlothin does not even discuss the 2007 Incident in the portion of his opening brief addressing the issue of Rule 403 balancing. Thus, the district court did not err, let alone plainly err, in refusing to exclude the 2007 Incident under Rule 403.

21

In contrast to his failure to identify any unduly prejudicial aspects of the 2007 Incident, McGlothin argues at length that Waits's testimony regarding the 2009 Incident was substantially more prejudicial than probative. Based on this court's independent review of the entire trial transcript, we note McGlothin seriously overstates the supposedly inflammatory nature of Waits's testimony and the government's closing arguments. Nevertheless, evidence regarding the 2009 Incident undoubtedly had the potential to be unduly prejudicial. In particular, the 2009 Incident involved a brutal attack by McGlothin on an unarmed woman, solely because that woman was having a lesbian affair with McGlothin's cousin. Nevertheless, given its exceptionally probative value, this court cannot conclude its potential for undue prejudice so substantially outweighed its probative value that the district court plainly erred in refusing to exclude Waits's testimony. This is especially true given exclusion of evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *Diaz*, 679 F.3d at 1190 (quotation omitted).[18]

### c. Limiting Instruction

---

[18]This court struggles to see even the slightest probative value to Exhibit 50, a bloody picture of Waits taken in the immediate aftermath of the assault. Nevertheless, McGlothin has not challenged on appeal individual evidentiary aspects of the 2009 Incident. Instead, he has only asserted the district court erred in admitting all aspects of the 2009 Incident. Consequently, this court will not undertake a piece-by-piece analysis of the evidence related to the 2009 Incident to determine whether the district court plainly erred in failing to exclude individual aspects of that evidence. *Cf. State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (holding this court will not consider issues not raised in a party's opening brief).

22

Upon request, a district court must instruct the jury that Rule 404(b) evidence "is to be considered only for the limited purpose for which it was admitted." *Diaz*, 679 F.3d at 1190 (quotation omitted). Despite McGlothin's failure to request such an instruction, the district court sua sponte instructed the jury as follows:

> Ladies and gentlemen, at times during the trial evidence may be admitted for a limited purpose and for no other purpose. The witness that you are about to hear from is such an instance. So you may hear evidence of other alleged acts committed by Mr. McGlothin and engaged in by him. You may consider that evidence only as it bears on the defendant's opportunity, knowledge, identity, absence of mistake or accident, and for no other purpose. Of course, the fact that the defendant may have previously committed an act similar to the one charged in this case does not mean that the defendant necessarily committed the act charged in this case.

At no point did McGlothin object to the content or form of the district court's limiting instruction. Nor did McGlothin come forward with an objection during the bench conference in which the district court discussed the proposed limiting instruction with the parties. Thus, this court's review of the district court's limiting instruction is limited to plain error. *See United States v. Rizvanovic*, 572 F.3d 1152, 1155 (10th Cir. 2009) (reviewing for plain error when party failed to object to limiting instruction). At no point in either of his briefs to this court on appeal, however, did McGlothin argue an entitlement to relief under the plain error standard. By failing to argue his entitlement to relief under the applicable standard, McGlothin has forfeited the argument in this court. *McKissick v. Yuen*, 618 F.3d 1177, 1189-90 (10th Cir. 2010).[19]

_____

[19]Even if this court were to ignore McGlothin's forfeiture and initiate plain error review sua sponte, McGlothin could not demonstrate the district court's instruction

23

## 2. Substantial Rights

Even assuming the district court plainly erred in admitting all evidence regarding the 2007 and 2009 Incidents, McGlothin would still not be entitled to relief because any such error would not have affected his substantial rights. A close review of the transcript in this case reveals much evidence that McGlothin constructively possessed the Glock on February 10th. That evidence is so overwhelming that the 2007 and 2009 Incidents had no effect on "the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993) (setting forth standard for determining whether an alleged trial error affected a defendant's substantial rights).

To summarize the evidence set out at greater length above, a search of the apartment McGlothin was using as a permanent residence revealed a loaded Glock in the open closet of a furnished bedroom. Although the Glock was partially hidden under clothing on a closet shelf, it was readily visible to the officer conducting the search of the bedroom. The closet contained men's clothing, a New York Yankees baseball cap, a stack of two-dollar bills, and two letters addressed to McGlothin. McGlothin was from New York and

---

amounted to plain error. The district court's limiting instruction is consistent with Tenth Circuit Pattern Jury Instruction (Criminal) No. 1.30 and this court has previously approved the admission of Rule 404(b) evidence in the face of similar instructions. *See, e.g.*, *United States v. Davis*, 636 F.3d 1281, 1300 (10th Cir. 2011); *United States v. Burgess*, 576 F.3d 1078, 1086 n.6 (10th Cir. 2009). Accordingly, any error McGlothin might be able to identify in the district court's instruction is certainly not plain. *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003) (holding that for an error to be plain it must be clear or obvious under well-settled law).

was known as "New York." Although he asserted he did not own the two-dollar bills, he admitted having spent some of them.

Ritchie testified that before he rented the apartment it was completely empty, cleaned out, and vacuumed. Ritchie did not keep clothes at the apartment and usually stayed elsewhere. On occasions when he did stay at the apartment, he either slept on the couch or in the empty bedroom because the furnished bedroom belonged to McGlothin. The only furniture in the apartment was purchased by McGlothin. Ritchie had no knowledge of anyone other than McGlothin and Paden staying at the apartment. McGlothin confirmed during his post-arrest interview with police that none of his friends stayed at the apartment. Ritchie and McGlothin were the only two people who had a key for the apartment. Ritchie had no incentive to shift blame onto McGlothin because he was legally entitled to possess a firearm. Nevertheless, he testified he did not own the firearm found in McGlothin's bedroom.

During his post-arrest interview, McGlothin admitted that he had previously handled the Glock. This admission was corroborated by the government's DNA expert. Berdine told the jury one of three DNA profiles found on the Glock was consistent with McGlothin's DNA profile and the odds of finding a random, unrelated person in the general population that shared the same DNA markers as McGlothin was roughly 1 in 110,000. McGlothin's ability to handle the Glock on a previous occasion made it

25

exceedingly likely he could exercise dominion and control over the Glock found in his closet on February 10th.

In the face of this overwhelming evidence of constructive possession, this court concludes evidence regarding the 2007 and 2009 Incidents did not affect the jury's guilty verdict. Because the evidence did not affect McGlothin's substantial rights, he is not entitled to relief on appeal. Fed. R. Civ. P. 52(b).

### III.  Conclusion

For those reasons set out above, the judgment of conviction entered by the United States District Court for the District of Colorado is hereby **AFFIRMED**.