**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL LEE MONTOYA,

Defendant - Appellant.

No. 11-2235
(D.C. No. . 1:10-CR-00460-MCA-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

Michael Montoya evolved from an unsuccessful armed bank robber to a successful

one. His "success" was short lived and not without consequences. He appeals from

convictions stemming from the attempted robbery of the Wells Fargo Bank in Raton,

New Mexico. He complains about the admission of evidence concerning his role in an

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

armed bank robbery six weeks later in Cortez, Colorado, arguing it denied him a fair trial. We affirm.

## BACKGROUND

A.   The Raton Attempted Robbery

On April 23, 2009, Montoya arrived at the house of his co-conspirator, James McBride, to travel from Farmington, New Mexico, to Raton, a mountain town on the New Mexico and Colorado border. The day before, they had discussed robbing the bank in Raton because McBride needed rent money. McBride drove Montoya's pickup, a yellow Dodge with black stripes. When they arrived in Raton, McBride drove by the bank while Montoya pointed out where McBride should drop him off and where McBride could park the truck while Montoya went into the bank. Eventually they put their plan into motion; McBride dropped Montoya off, parked, and waited.

The robbery did not go as planned. Montoya, carrying a laptop bag, entered the bank, and told the teller he wanted to see a loan officer. The teller directed him to wait outside the office of Diane Dixon, the personal banker for the Raton office. A few minutes later, Dixon invited Montoya into her office. He took a seat across from her and placed a note on her desk. The typed note was mostly in black print but some words were in red. The note said: "Read this letter very carefully. I have a gun and I will not be afraid to use it." (Vol. 4, Part 4 at 310.) It also stated he had a bomb and threatened detonation if she did not cooperate.

Dixon read about one third of the note, then leaned back and asked: "What do you want me to do?" (*Id*. at 311.) Montoya said, "I want you to take me over there to that

- 2 -

vault." (*Id*.) Dixon replied, "I can't do that." (*Id*.) She explained the vault was "under dual control," and the other person had just left and would not be back for an hour. (*Id*.) Dixon offered to get the manager, "Margaret" (the bank's code for an emergency), but he did not want her to contact anyone else. (*Id*. at 312.) He asked how much money the tellers had and how many employees were in the bank. After Dixon answered, Montoya sat thinking for a short while, but then a customer arrived and sat in the chair outside Dixon's office. Dixon told Montoya the customer was there for an appointment "so if [he wanted to] take [his] letter and leave . . . [he was] welcome to do that." (*Id*. at 322.) Montoya took his note and Dixon walked him toward the door. When he left, she gave the alert. Employees locked the front door and called 911. Dixon ran to the window to see where the robber went, but she lost sight of him. However, the event was captured on the bank surveillance video. Dixon never saw a gun and so testified.

When local law enforcement officers arrived, the only lead was given by two pedestrians who said they saw a man walk behind the bank and get into a yellow and black Dodge truck. Officers issued a "Be On The Lookout" (BOLO) for the truck, but it did not result in the capture of the robber or his accomplice. (Vol. 4, Part 5 at 396.)

According to McBride, as they drove away he asked: "How'd it go?" (Vol. 4, Part 5 at 621.) Montoya replied: "[I]t didn't work out." (*Id*.) Montoya told McBride he could not access the vault because it took two keys. McBride asked: "Why would you try to get in the vault? . . . . [H]ow would you do that with a note?" (*Id*.) Montoya answered: "Well, I had this, too" and pulled a gun from the laptop bag. (*Id*.) McBride could see the top chrome part of the gun's slide and the grips "looked like . . . black

plastic." (*Id*. at 622.) Later in his testimony, McBride said he remembered the gun had a wood grip – "reddish wood, kind of a reddish brown." (*Id*. at 642.)

B.    The Cortez Robbery

On June 8, 2009, McBride and Montoya were stopped by a San Juan County Sheriff as they drove in Montoya's yellow and black pickup from Kirtland, Colorado, to Cortez, Colorado; McBride was driving and received the citation. Later that day, they robbed a bank in Cortez, Colorado, located approximately 70 miles north of Farmington, New Mexico. This time, Montoya brandished a gun during the robbery and witnesses identified the get-away vehicle as McBride's tan and maroon Ford Bronco. After the robbery, McBride drove Montoya to his Dodge pickup and they separated. This time, a BOLO for McBride's Bronco was successful. He was stopped and arrested. A search of his truck revealed the citation from that morning. Subsequent investigation showed McBride had been driving Montoya's truck and Montoya was a passenger when the citation was issued. In addition, officers discovered McBride's cell phone, which was registered under Montoya's account. Eventually, McBride agreed to cooperate with law enforcement and identified Montoya as his accomplice in Cortez and, later, told officers about Raton. McBride pled guilty to the Cortez robbery and, in exchange for immunity on the Raton robbery, agreed to testify against Montoya.

Montoya's home was searched on June 18, 2009. Officers found three partial robbery demand notes on his computer, a laptop bag and, in his dresser, three typewritten robbery demand letters bearing his finger and palm prints.

- 4 -

Montoya was charged with (1) conspiracy to rob the Raton bank; (2) carrying a firearm during the conspiracy; (3) attempting to rob the Raton bank; and (4) carrying a firearm during the attempted robbery.[1]  Prior to trial, the government sought to introduce evidence of other bank robberies attributed to McBride and Montoya, including the Cortez robbery and Montoya's use of a gun during that robbery.  The government's theory of admissibility was *res gestae*[2] and Rule 404(b) of the Federal Rules of Evidence.

After a hearing, the district judge carefully addressed the government's proposed evidence and decided much of the government's other crime evidence was inadmissible.  However, she allowed the government to present limited *res gestae* evidence about the Cortez robbery to explain the circumstances leading to Montoya's arrest.  The judge also decided to permit the bank teller in the Cortez robbery, Erin Goad, to testify about seeing Montoya use a silver gun with wooden grips during the robbery.  The testimony was admissible under Rule 404(b), the judge said, because a jury could reasonably conclude Montoya carried the same gun in Cortez as the one McBride saw in Montoya's laptop bag following the Raton attempted robbery.

In the Raton trial, McBride testified about driving to Cortez, waiting in the truck, and leaving after the robbery.  He said he did not know a gun was used.  In addition,

---

[1]  Montoya was charged separately for the Cortez robbery in Colorado federal court.  The jury found him guilty.

[2]  "The doctrine of 'res gestae' allow[s] use of otherwise inadmissible evidence to place an event in its proper context."  21A The Late Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold, Michael H. Graham, Federal Practice & Procedure Evidence § 5072.2 (2d ed. 2012).

- 5 -

various investigators testified about their involvement in the Cortez investigation and the circumstances leading them to suspect Montoya as the perpetrator. They did not testify about the details of the Cortez robbery.

The only testimony of Montoya's use of a gun in Cortez was Goad's. In summary it went as follows. At approximately 4 p.m., Goad was doing paperwork when Montoya approached her. She looked up and asked if she could help him. She saw Montoya had a gun and began emptying the money from her drawer and placing it on the counter. The gun was "silver" with "tan . . . on the sides of the handle." (Supp. R. at 120.)[3] The "gun was pointed at [her] the whole time" and Montoya's "finger was on the trigger." (*Id*. at 120.) Following Goad's testimony, the judge gave the jury an instruction limiting its consideration of Goad's testimony.

The jury found Montoya guilty of the conspiracy and attempted bank robbery charges. It could not reach a verdict on the gun charges, which were later dismissed.

## DISCUSSION

Montoya makes two claims of error: First, the evidence of the Cortez robbery was not *res gestae* and, even if it was, it was barred by Federal Rule of Evidence 403. Second, Goad's testimony was inadmissible under Rule 404(b) because its only purpose was to show his propensity to carry a gun during robberies. Because he preserved these claims with timely and specific objections, we review the evidentiary rulings for an abuse of discretion. *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010).

---

[3] A mistake by the court reporter omitted several pages of the trial transcript. These pages were provided to this court following oral argument.

A.      Evidence of Cortez Robbery – *Res Gestae*

After considering Montoya's objections to the introduction of evidence relating to the Cortez robbery, the judge allowed the government to introduce limited evidence about the robbery itself, McBride's arrest, and the subsequent investigation. The judge determined the evidence was admissible under the doctrine of *res gestae* to place the Raton investigation in context and explain how Montoya came to be charged with committing the Raton attempt.

Montoya maintains the *res gestae* doctrine does not apply because "evidence of the Cortez robbery was unnecessary to explain the course of the government's investigation of the Raton attempted robbery." (Appellant's Br. at 13.) According to Montoya:

> The jury could have been informed that McBride was stopped because officers received information linking him to a bank robbery; that officers uncovered a citation from McBride's vehicle that he received while driving Montoya's truck; they began investigating Montoya and searched Montoya's residence. In the course of McBride's discussion with authorities, he informed them of information concerning the Raton robbery, which led to further investigation. To the extent that evidence of crimes other than the Raton attempted robbery was necessary to prevent the jury from concluding that McBride got full immunity from prosecution in exchange for his cooperation, the jury could have been informed that McBride had faced prosecution on other charges.

(*Id*. at 18-19.) We disagree.

"An uncharged act is admissible as *res gestae* — intrinsic evidence not subject to Federal Rule of Evidence 404(b) — if it was inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act." *Ford*, 613 F.3d at 1267 (quotation marks omitted). "Evidence

of other crimes should not be suppressed when those facts come in as *res gestae* — as part and parcel of the proof of the offense charged in the indictment." *Id.*

McBride's arrest for the Cortez robbery could not be separated from the Raton investigation. Montoya's theory of defense was that McBride set him up and he was not at the bank in Raton. Thus, for the jury to understand the importance of the evidence found in McBride's Bronco and his connection to Montoya, it needed to know McBride was arrested after he and Montoya robbed the Cortez bank. McBride's arrest was the turning point in the Raton investigation. Authorities did not know the two incidents were connected until McBride began to cooperate. It is likely the Raton attempt would have continued unresolved if the two men had not continued to plot robberies and one been caught. In short, the evidence of the Cortez robbery and McBride's arrest is *res gestae* — intrinsic evidence inextricably connected to the charged crimes.

Although relevant *res gestae* evidence must also meet the requirements of Federal Rule of Evidence 403. The district judge must exclude the evidence "if its probative value is substantially outweighed by a danger of . . . *unfair* prejudice." Fed. R. Evid. 403 (emphasis added). "[*U*]nfair prejudice . . . 'makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocen[c]e of the crime charged.'" *Ford*, 613 F.3d at 1268 (quoting *United States v. Tan,* 254 F.3d 1204, 1211–12 (10th Cir. 2001)).

Damning evidence is most often prejudicial to a defendant's case, but to be excluded it must be unfairly prejudicial. As discussed above, the circumstances of

McBride's arrest following the Cortez robbery were relevant to the investigation of the Raton attempted robbery. The prejudice Montoya may have suffered as a result was not unfair. The judge carefully limited the testimony of the Cortez robbery to the investigatory process. The testimony at trial never veered from those limitations. Only Goad was allowed to discuss Montoya's activities during the Cortez robbery, and that testimony was admitted for another purpose, as we will later discuss. The judge did not abuse her discretion in finding the probative value of the limited testimony was not substantially outweighed by the danger of unfair prejudice.

B.      Evidence of Gun Used in Cortez – Federal Rule of Evidence Rule 404(b)

Montoya also contends Goad's testimony describing the gun pointed at her during the Cortez robbery was not offered for a proper purpose. Rather, it was relevant only by virtue of the impermissible inference that he has a propensity to employ deadly weapons when committing crimes. This argument is foreclosed by our recent decision in *United States v. McGothlin*, 705 F.3d 1254, 1265 (10th Cir.), *cert. denied*, 2013 WL 1758738 (S. Ct. 2013), where we held possession of the same (or a very similar) weapon on another occasion is not Rule 404(b) evidence. Rather, it is circumstantial evidence of the knowing possession of the weapon. *Id*.

In *McGothlin*, the defendant was charged with being a felon in possession of a firearm after an officer discovered a pistol in the closet of a bedroom where he had been staying. *Id*. at 1257. The trial judge determined, subject to the testimony at trial, the government could introduce evidence of two prior incidents potentially falling within the parameters of Rule 404(b). One incident was the defendant's possession of a loaded

handgun in 2007, which led to his conviction for illegal possession of a handgun. *Id*.

The second incident, an assault on Ersel Waits, occurred in 2009 – three months before

the gun was found in McGothlin's closet. At trial, Waits testified about McGlothin's

assault on her. She said he carried a gun indistinguishable from the gun found in the

apartment although she "could not positively say it was the same gun." *Id*. at 1259 n.7.

McGlothin claimed the judge erred in admitting the evidence of the prior incidents

under Rule 404(b) because it was offered for the purpose of showing his "propensity to

possess firearms." *Id*. at 1260. We took note of our decision in *United States v. Moran*,

503 F.3d 1135, 1144 (10th Cir. 2007), which rejected the exclusion of all propensity

evidence under Rule 404(b). Even if evidence shows propensity, it may be admissible to

show intent and knowing possession under Rule 404(b). *Id*. at 1263*; see also Tan*, 254

F.3d at 1208 ("Rule 404(b) is considered to be an inclusive rule, admitting all evidence of

other crimes or acts except that which tends to prove *only* criminal disposition.")

(quotation marks omitted).

> Specifically addressing the 2009 incident, we said:
>
> [T]he record makes clear the highly relevant evidence regarding the 2009
> Incident was adduced for a proper purpose. The purpose of Rule 404(b) is
> to prevent the use of prior bad acts to prove a defendant has a propensity to
> commit acts of that sort. Fed. R. Evid. 404(b). Despite McGlothin's
> arguments to the contrary, no reasonable juror would have perceived the
> purpose of Waits's testimony for anything other than demonstrating
> McGlothin possessed the [pistol] during a time temporally proximate to the
> possession alleged in the indictment. This testimony then does not have
> anything to do with propensity, either the kind identified in *Moran* or the
> improper kind identified in Rule 404(b). Instead, it is circumstantial
> evidence that he knowingly possessed the [pistol] found in his closet.

*McGothlin*, 705 F.3d at 1265 (citation omitted); *see also United States v. Smith,* 101 F.3d 202, 210–11 (1st Cir. 1996) (holding that evidence the defendant possessed the same weapon earlier in the evening admissible to show knowing possession of felon-in-possession charge); *United States v. Tenorio,* 312 Fed. App'x 122, 127 (10th Cir. 2009) (unpublished disposition cited for persuasive value pursuant to 10th Cir. R. 32.1) ("If Tenorio possessed the same gun on past occasions, it is considerably more likely that the gun still belonged to him at the time it was found in . . . [the] car and correspondingly less likely that the gun belonged to someone else or was simply there when he entered.").

As in *McGothlin*, Goad's testimony was circumstantial evidence of Montoya's knowing possession of a gun inside the laptop bag during the Raton attempt. No gun was ever found from the Raton incident or the Cortez robbery. But, McBride described how Montoya had shown him a chrome handgun with wood grips. Goad's testimony described the bank robber's gun as a silver one with tan grips, [a gun very similar to the one McBride described on the day of the Raton attempt]. This is not Rule 404(b) evidence; it is direct evidence demonstrating the likelihood Montoya carried a gun in his laptop bag while he attempted to rob the bank in Raton. Rule 404(b) presents no bar to its admissibility. *See United States v. Dorsey*, 677 F.3d 944, 952 (9th Cir. 2012) (holding testimony defendant was seen with same or similar gun not "other act" evidence subject to Rule 404(b)); *see also United States v. Adams*, 604 F.3d 596, 599 (8th Cir. 2010) (holding four previous instances of defendant's possession of same firearm not subject to Rule 404(b)).

Even if Rule 404(b) were implicated, there was no error here.  After all, Montoya was on trial for two weapons offenses in addition to conspiracy to rob a bank and attempted bank robbery.  To be admissible under Rule 404(b), the evidence must satisfy a four part test:

> (1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*United States v. Diaz,* 679 F.3d 1183, 1190 (10th Cir. 2012) (quotation marks omitted).

"Evidence is proper if it tends to prove, among other things, motive, knowledge, or intent." *Id*.

The judge relied on two other permissible rationales for admissibility.  Goad's testimony was offered to show Montoya knowingly possessed the same gun on June 8th (Cortez robbery) that he carried with him during the April Raton attempted robbery.  This evidence was also admissible to corroborate McBride's testimony.  *See United States v. Porter*, 881 F.2d 878, 886 n.8 (10th Cir. 1989) (noting corroboration of government witness is proper use of 404(b)(1) evidence).

But that does not end the debate.  While evidence of Montoya's use of a similar gun is not propensity evidence under Rule 404(b), it must still pass muster under Rule 403.  That rule allows judges to exclude evidence when the probative value of the evidence is "substantially outweighed by a danger . . . of unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.  Evidence is unfairly prejudicial

when it has the capacity "to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States,* 519 U.S. 172, 180 (1997). In considering whether evidence is unfairly prejudicial, a judge may consider the availability of alternative probative evidence. *Id.* at 184–85.

Rule 403 does not bar Goad's relevant testimony. As the trial judge reasoned:

> Investigators never recovered a gun like the one described by McBride and E.G. Eyewitness testimony will therefore be crucial to the United States' ability to establish that Defendant carried a firearm. The Court anticipates that Defendant's strategy will be to attack McBride's credibility. Evidence corroborating McBride's testimony that Defendant possessed a semi-automatic pistol with chrome and wood pistol grips will be very important . . . .

While the judge recognized the potential for prejudice caused by Montoya's presence at a second bank robbery and the impact of the circumstances surrounding Goad's observation of the gun, on balance, she determined the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. We agree. The evidence of the Cortez robbery was appropriately limited and accompanied by proper instructions to the jury. Indeed, the jury was hung, failing to reach a verdict on the gun charges. There was no abuse of discretion in admitting Goad's testimony. AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge