**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 6, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ARTHUR HARRIS,

Defendant - Appellant.

No. 12-2077

(D. New Mexico)

(D.C. No. 2:10-CR-03150-BB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant, Arthur Harris, was found guilty following a jury trial of being a felon in possession of a gun, in violation of 18 U.S.C.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

§§ 922(g)(1) and 924 (e).  He was subsequently sentenced to 298 months' imprisonment.  Mr. Harris filed this appeal, in which he challenges both his conviction and sentence.

## BACKGROUND

On June 25, 2010, AC (a third-grader) was staying at his grandmother's trailer house in Roswell, New Mexico.  AC's grandmother is Terri Castaneda.  At approximately 2 a.m., AC heard Ms. Castaneda scream.  When he went to the hall outside his grandmother's bedroom, he saw defendant, Mr. Harris, pointing a gun at Ms. Castaneda's head.  AC then called  911 and told the 911 operator that Mr. Harris was hitting his grandmother in the head and that he had a gun.

As background to this incident, Ms. Castaneda and Mr. Harris had been dating for approximately a month and a half.  On June 24, 2010, Mr. Harris, accompanied by Ms. Castaneda's brother, Eddy Rodriguez, picked up Ms. Castaneda after she completed her work shift at the Roswell Country Club.  Mr. Harris and Mr. Rodriguez were driving a Lincoln automobile owned by Mr. Harris's father.  Ms. Castaneda testified that she saw Mr. Harris with a small handgun when he picked her up.  She said that Mr. Harris either was holding the gun or had it in his lap.

At some point after Mr. Harris dropped off Ms. Castaneda at her home, she called Mr. Harris, inquiring whether he was coming over to her trailer.

Mr. Harris said he would arrive in fifteen or twenty minutes. Mr. Harris arrived at Ms. Castaneda's trailer at approximately 2:30 a.m., and he asked Ms. Castaneda to go with him to his father's house. Ms. Castaneda declined because she was taking care of AC. This upset Mr. Harris, who told Ms. Castaneda never to call him again, and then left. He immediately returned, however, because he had forgotten his car keys and a crucifix.

Mr. Harris was still upset when he returned, apparently because he thought Ms. Castaneda was waiting for someone else. He struck Ms. Castaneda twice with something solid, which she believed to be a gun. She was struck on one eye and one ear. Ms. Castaneda testified that Mr. Harris told her he should have killed her. Mr. Harris allegedly pointed the gun at Ms. Castaneda from a distance of two or three feet.

Roswell Police Officer John Gokey was dispatched to the Castaneda residence at 3:28 a.m., in reference to a report (apparently AC's 911 call) that a man had pointed a firearm at a woman, but that the man had left the house. When Officer Gokey arrived at the residence, he saw Mr. Harris standing in the driveway near the front of a white Lincoln. Roswell Police detective Steve Meredith also arrived at the Castaneda residence. As Mr. Harris walked toward the house, Detective Meredith ordered him to stop and lie on the ground. When he (Mr. Harris) failed to do so, Detective Meredith forced Mr. Harris to the ground and placed handcuffs on him. Officer Gokey found a gun some three to

five feet from where Mr. Harris was on the ground.  The gun had one round in the chamber and the other bullets were in the front of the magazine.

At trial, Mr. Harris's sister, Pilar Harris, testified that she kept her gun, a Beretta .25 caliber pistol, in her father's Lincoln automobile.  The gun was stored under the driver's seat.  Ms. Harris kept one round in the chamber and three additional bullets with the magazine.  She identified the gun found at Ms. Castaneda's trailer home as her gun.

As indicated, Mr. Harris was found guilty of being a felon in possession of a firearm.  In preparation for sentencing under the advisory United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Probation Office prepared a presentence report ("PSR").  The PSR determined that Mr. Harris was an armed career criminal, pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), and therefore subject to a minimum mandatory sentence or an enhanced sentence under the Guidelines.[1]  The PSR further determined that Mr. Harris had an offense level of 34 and that he had at least four prior violent felony convictions.[2]  With a criminal history category of

---

[1]Under the ACCA, a defendant who violates 18 U.S.C. § 922(g) and has "three previous convictions . . . for a violent felony . . . shall be . . . imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).

[2]The four prior violent felony convictions were for residential burglary, commercial burglary (twice) and aggravated assault.  We discuss, *infra*, Mr. Harris's argument that these convictions were incorrectly categorized as violent felonies.

VI, Mr. Harris faced a Guidelines advisory sentencing range of 262 to 327 months, and a minimum mandatory statutory sentence under the ACCA of fifteen years to life.

Additionally, Mr. Harris had been previously convicted of the identical offense as in the instant case. Indeed, as set forth in ¶ 50 of the PSR, Mr. Harris was convicted on March 22, 2002, of being a felon in possession of a firearm and was sentenced to a term of 120 months' imprisonment. He was released from prison and placed on supervised release on April 15, 2010, which was to last until April 15, 2014.

Both the government and Mr. Harris filed sentencing memoranda. The government stated its belief that "there are existing aggravating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2) should result in a sentence different from that described, and that an upward departure may be applicable." Gov. Sentencing Mem. at ¶ 12 (citing USSG §5K2.0(a)(1)(A)). The government therefore advocated for a sentence of life imprisonment.

Mr. Harris filed objections to the PSR as well as a sentencing memorandum. In his "Formal Objections" to the PSR, Mr. Harris objected to the assessment of points under the ACCA based on Mr. Harris's prior convictions for residential burglary, aggravated assault and (twice) for commercial burglary. He

averred that the "statutory definition of each of the prior offenses listed proscribes a range of conduct that is broader than the ACCA's definition of violent felony." Formal Objections at ¶ 1. Mr. Harris accordingly asked the district court to consider whether he, in each particular case, was convicted of an offense that qualifies as a violent felony pursuant to the modified-categorical approach set out in Shepard v. United States, 544 U.S. 13, 26 (2005).

In his sentencing memorandum, Mr. Harris sought either a downward departure or a variance. He sought a variance because of his "serious and extremely limiting health problems," his "mental infirmities," and his age. Def.'s Sentencing Mem. at 5, 6. Mr. Harris opined that a fifteen-year sentence would "protect the community, reflect the seriousness of the offense, promote respect for the law, and provide just punishment." Id. at 9.

At his sentencing hearing, Mr. Harris continued to ask for a fifteen-year sentence. The government continued to request a sentence of life imprisonment. After hearing argument from both sides, the court stated that it had considered "the presentence report factual findings[,] . . . the sentencing guideline applications[,] [and] the factors of 18 United States Code, Section 3553, including the finding that defendant is an armed career criminal." Tr. of Sentencing Hr'g at 17. The court then sentenced Mr. Harris to 298 months, after noting that it was most concerned because Mr. Harris "whole career" has been one of "harming

other people." Id. at 18. "It's hard for me to conclude anything other than you are a threat to society." Id.

This appeal followed, in which Mr. Harris argues: (1) the district court erred in admitting evidence, under Fed. R. Evid. R. 404(b), that Mr. Harris had been convicted of being a felon in possession of a firearm in the past; and (2) the district court failed to rule on Mr. Harris's objections to the PSR and therefore imposed a procedurally unreasonable sentence.

**DISCUSSION**

**I. Whether district court ruled on PSR objections**

Before trial, the government filed a motion *in limine* seeking permission to tell the jury, pursuant to Fed. R. Evid. 404(b), that Mr. Harris had been convicted, in 2002, of the same offense for which he was on trial in the instant case—i.e., being a felon in possession of a firearm. Mot., R. Vol. 1 at 19-24.

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is inadmissible to prove the character of the accused, but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Our court imposes four requirements for evidence to be admitted under Rule 404(b):

(1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

United States v. Diaz, 679 F.3d 1183, 1190 (10th Cir. 2012); see Huddleston v. United States, 485 U.S. 681, 691-92 (1988). "Admission of evidence under [Rule] 404(b) is reviewed under an abuse of discretion standard." Diaz, 679 F.3d at 1190 (internal quotation marks omitted); see also, United States v. Farr, 701 F.3d 1274, 1280 (10th Cir. 2012). We "will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact, or an erroneous conclusion of law or manifests a clear error in judgment." United States v. Contreras, 536 F.3d 1167, 1170 (10th Cir. 2008) (quotations omitted).

"To obtain a conviction under 18 U.S.C. § 922(g)(1) for possession by a felon of a firearm or ammunition, the government had to prove (1) [Mr. Harris] was convicted of a felony; (2) he thereafter knowingly possessed a firearm and/or ammunition; and (3) the possession was in or affecting interstate commerce." United States v. Wilson, 107 F.3d 774, 779 (10th Cir. 1997). The government asserts that admission of the prior felon-in-possession conviction showed Mr. Harris's "knowledge" and "absence of any mistake or accident." Mot., R. Vol. 1 at 20. Mr. Harris objected to its admission, arguing that none of the exceptions to Rule 404(b) apply, since nothing related to the prior conviction shows "plan,

motive, opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident." He further argued that it was unduly prejudicial and would only let the jury infer propensity, which is not permitted.

The district court granted the government's motion *in limine*, allowing the prosecutor to inform the jury that Mr. Harris was previously convicted of the same offense of being a felon-in-possession. See Tr. of Trial, R. Vol. 3 at 194. The court further stated that it would provide a limiting instruction prohibiting the jury from using the 404(b) evidence improperly. Id.

Mr. Harris renewed his objection when, during trial, the government formally moved to introduce the prior conviction. The district court overruled the objection, and evidence as to Mr. Harris's prior conviction for being a felon-in-possession was admitted. See id. at 687.

Immediately prior to the government resting its case-in-chief, the district court instructed the jury as follows:

> Ladies and Gentlemen of the jury, you have heard evidence relating to the defendant's prior felony conviction in 2002 for the charge of being a felon in possession of a firearm.
> You may consider that evidence only for the purpose of judging whether he knowingly possessed a weapon in this case. You cannot consider the fact of his previous conviction for any purpose other than judging whether he knowingly possessed a firearm in this case.
> In other words, the fact that he may have committed this offense in the past is not evidence that he committed it now. You have to use it for a limited purpose.

Id. at 750. In its final charge prior to the jury's deliberations, the court instructed the jury:

> You have heard evidence relating to the defendant's prior conviction in 2002 for the charge of being a felon in possession of a firearm. You may consider that evidence only for the purpose of judging whether he knowingly possessed weapon in this case. You cannot consider evidence relating to his previous conviction for the charge of being a felon in possession of a firearm for any purpose other than judging whether he knowingly possessed a firearm in this case.

Id. at 847.

The government relies heavily on two prior cases from our court, in which we held that the admission of evidence (that the defendant had previously been convicted of being a felon in possession of a firearm) was admissible in a later proceeding charging the same offense. Indeed, the government describes one case as "virtually identical to this case." Appellee's Br. at 12.

The "virtually identical" case is United States v. Moran, 503 F.3d 1135 (10th Cir. 2007). The defendant in Moran was convicted of being a felon in possession of a firearm after a rifle was found in the car he was driving. At his trial, the district court permitted the government to introduce evidence of a twelve-year-old conviction for the identical offense of being a felon in possession of a firearm. The government presented, and the court admitted, evidence of the prior conviction to show "'knowledge, intent, and absence of mistake or accident,' proper purposes under Rule 404(b)." Id. at 1144. We held that the

prior conviction was relevant "because it is probative to demonstrate that [the defendant] 'knowingly' possessed the firearm." Id. We explained more fully why this is so:

> Mr. Moran denied knowledge of the rifle in the car, and the government had the burden of proving knowing possession of the firearm. To prove the knowledge element of the offense, the government offered evidence that Mr. Moran knowingly possessed a firearm at another point in time. Because the prior conviction required the same knowledge, evidence of the conviction had a "tendency to make the existence of" Mr. Moran's knowledge of the rifle in the present case "more probable . . . than it would be without the evidence." . . . In other words, the fact that Mr. Moran *knowingly* possessed a firearm in the past supports the inference that he had the same knowledge in the context of the charged offense.

Id. (quoting Fed. R. Evid. 401; other citations omitted).

Mr. Harris responds that this logic only applies when the sole issue in dispute is the defendant's "knowledge" that he possesses the gun. It does not apply in a case like this, he argues, where the defendant refutes the charge not on the ground that he did not "know" he possessed a firearm, but on the ground that he did not possess a firearm at all. We disagree.

As the government argues, Mr. Harris pled not guilty to the crime of being a felon in possession of a firearm, and that placed all of the elements of the crime, including knowledge, at issue. Furthermore, Mr. Moran and Mr. Harris both specifically denied knowledge of the weapon—Mr. Moran denied knowledge of the rifle in the car, and Mr. Harris denied knowledge of the weapon found near him outside Ms. Castaneda's trailer. In short, Moran provides persuasive

controlling authority to uphold the district court's decision to admit evidence of the prior conviction.[3]

Additionally, the district court, as indicated above, gave limiting instructions to the jury, reminding them of the limited role of the evidence of the prior felon-in-possession conviction. We assume juries follow their instructions. "We presume jurors will remain true to their oath and conscientiously follow the trial court's instructions." United States v. Turrietta, 696 F.3d 972, 978 (10th Cir. 2012) (quoting United States v. Carter, 973 F.2d 1509, 1513 (10th Cir. 1992)).

Finally, our standard of review is abuse of discretion. There was no clearly erroneous factual finding or legal conclusion underlying the district court's decision, nor did the court make any clear error of judgment. We accordingly discern no abuse of discretion.

---

[3]The second case upon which the government relies is United States v. McGlothin, 705 F.3d 1254 (10th Cir. 2013), decided after the district court's ruling in the instant case. McGlothin largely followed Moran, observing that "Moran makes clear that when a defendant places his intent at issue, the defendant's prior acts of weapon possession are relevant for the purpose of demonstrating the act of firearm possession was knowingly undertaken." Id. at 1263. Both McGlothin and Moran support the government's position, and our decision, in this case.

We note that Mr. Harris "preserves a challenge to Moran, so that he can attack it by means of an *en banc petition*. Specifically, he will challenge the rule allowing a stale 922(g) conviction, one arising years earlier and involving a different gun, to be admitted in a trial charging the defendant with illegal possession of a firearm." Appellant's Br. at 21.

**II. Objections to PSR**

Mr. Harris's second argument is that the district court imposed a procedurally unreasonable sentence because it failed to rule on the objections he raised to the PSR, as required by Fed. R. Crim. P. 32(3)(B). "A sentence is procedurally unreasonable if the district court 'failed to calculate (or improperly calculated) the Guidelines range, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors or failed to adequately explain the chosen sentence." United States v. Middagh, 594 F.3d 1291, 1294 (10th Cir. 2010) (citations and quotations omitted). We review claims of procedural error for an abuse of discretion, evaluating factual findings for clear error and legal determinations de novo. United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir.), cert. denied, 133 S. Ct. 555 (2012).

Rule 32(i)(3)(B) states: "At sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." The rule only addresses factual disputes. Our court has repeatedly stated that "Rule 32 is not a vehicle for advancing legal challenges in sentencing, and the district court is not obligated to make Rule 32(i)(3)(B) findings where the issues the defendant raises do not involve factual inaccuracies in the report, but, rather, legal objections to the district court's determination of his sentence."

<u>Middagh</u>, 594 F.3d at 1295 (quoting <u>United States v. Cereceres-Zavala</u>, 499 F.3d 1211, 1214 (10th Cir. 2007)).

As indicated above, Mr. Harris filed "Formal Objections" to the PSR. His primary objection was to the PSR's characterization of four of his prior convictions as convictions for violent felonies, thereby qualifying him for an increased sentenced under the ACCA, pursuant to 18 U.S.C. § 924(e)(2)(BB)(I) and USSG §4B1.4. His prior convictions were for residential burglary, commercial burglary (twice) and aggravated assault with a deadly weapon, all in violation of New Mexico law. Mr. Harris claims that "[t]he statutory definition of each of the prior offenses listed proscribes a range of conduct that is broader than the ACCA's definition of violent felony." Objections to PSR at ¶ 1 (citing <u>United States v. Hernandez</u>, 568 F.3d 827, 829 (10th Cir. 2009)).

The Probation Office responded to these objections, explaining (correctly) why Mr. Harris's convictions for burglary (both residential and commercial) and aggravated assault qualified as violent felonies under the ACCA.[4] Mr. Harris

---

[4]The ACCA includes "burglary" in its list of enumerated violent felonies, § 924(e)(2)(B)(ii), but it does not define the offense. "Because burglary has different meanings in various state jurisdictions, the Supreme Court provided a definition in <u>Taylor v. United States</u>, 495 U.S. 575 (1990). It explained that the ACCA refers to 'generic' burglary, which includes 'the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.'" <u>United States v. Maldonado</u>, 696 F.3d 1095, 1097-98 (10th Cir. 2012) (quoting <u>Taylor</u>, 495 U.S. at 598).

We have previously held that New Mexico's burglary statute, N.M. Stat. Ann. § 30-16-3(B), is a non-generic statute. <u>United States v. King</u>, 422 F.3d

(continued...)

does not appear to have refuted this analysis anywhere before the district court.

Indeed, even in his objections, filed some seven months before the sentencing

hearing, Mr. Harris did not argue that his prior convictions were *not* for violent

felonies; rather he "requested the Court consider *whether* Mr. Harris, in each

particular case, was convicted of an offense that qualifies as a violent felony."

Objections at ¶ 1. Nor does he refute the Probation Office's analysis in his

appellate brief. His only argument is that the district court violated Rule 32 by

failing to specifically respond to his objections.

We perceive no violation of the district court's fact-finding obligations

under Rule 32(i)(3)(B). Rather than disputing the PSR's factual findings, Mr.

Harris was really challenging the application of the Guidelines and the ACCA to

the facts. See United States v. Cereceres-Zavala, 499 F.3d 1211, 1215 (10th Cir.

2007) (explaining that "[a]rguments that challenge the district court's application

---

⁴(...continued)
1055, 1058 (10th Cir. 2005). Therefore, we must look to other documents to determine whether Mr. Harris committed a generic burglary by entering a building or structure. United States v. Shepard, 544 U.S. 13 (2005); Taylor, 495 U.S. at 602. We are limited, however, "to examining the . . . charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Shepard, 544 U.S. at 16. The Probation Office, in response to Mr. Harris's objections to the PSR, found that the charging documents in each of Mr. Harris's three prior burglary convictions established that he had committed generic burglaries, and therefore violent felonies, for ACCA purposes. Thus, we need not consider Mr. Harris's aggravated assault conviction, although we have previously found that aggravated assault under New Mexico law constitutes a violent felony. See United States v. Ramon Silva, 608 F.3d 663 (10th Cir. 2010).

of the guidelines to the facts and not the facts themselves do not trigger any obligation on the part of the district court to make specific findings" (internal quotation marks omitted)). Thus, Mr. Harris's objection to the PSR did not trigger the district court's fact-finding obligations pursuant to Rule 32(i)(3)(B). Mr. Harris's sentence was accordingly not procedurally unreasonable.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence and conviction in this case.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge